39372. PERANO et al. v. THE STATE.

GREGORY, Justice.

The Georgia Court of Appeals certified the following:

"Under Code Ann. § 68A-902.1 (a) (3) [OCGA § 40-6-392 (a) (3)] a motorist who has been requested to undergo a chemical test by a law enforcement officer pursuant to the provisions of Code Ann. § 68B-306 [OCGA § 40-5-55] 'may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer.' Under Code Ann. § 68A-902.1 (a) (4) [OCGA § 40-6-392 (a) (4)], '[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to (Code Ann. § 68A-902.1 (a) (3)) [OCGA § 40-6-392 (a) (3)].'

"In *Garrett v. Dept. of Public Safety,* 237 Ga. 413 (228 SE2d 812) (1976), the defendant-motorist was at no time informed of his right to have an independent test made by someone of his own choosing. On these facts, the Supreme Court, in construing Code Ann. § 68A-902.1 (a) (4) [OCGA § 40-6-392 (a) (4)], held that 'the legislature used the mandatory language: "The arresting officer at the time of the arrest *shall* advise the person arrested of his rights . . ." This cannot be interpreted to mean sometime in the future. One cannot make an intelligent choice to submit to a chemical test without the knowledge of the right to have an independent test made in order to contest the validity of the state's test.' *Garrett,* 237 Ga. at 415, supra. In so holding, the Supreme Court cited with approval *Nelson v. State,* 135 Ga. App. 212 (217 SE2d 450) (1975), a case in which there was also a total failure to advise the defendant-motorist of his right to an additional test.

"In two cases subsequent to the Supreme Court's decision in *Garrett* but without citation to it, the Court of Appeals held that the 'mandatory' directive of Code Ann. § 68A-902.1 (a) (4) [OCGA § 40-6-392 (a) (4)] was satisfied where, subsequent to the actual

physical arrest itself but prior to the state-administered test, the defendant-motorist had been advised at the police station of his right to an additional test. See *Rayburn v. State,* 140 Ga. App. 712 (1) (231 SE2d 383) (1976); *Huff v. State,* 144 Ga. App. 764 (242 SE2d 361) (1978).

"Subsequent to the decisions in *Rayburn* and in *Huff* but without citation to them, the Court of Appeals, relying specifically upon *Garrett,* held that '[t]here is no evidence in the case at bar to show that appellant was advised of his right (to an additional test) *at the time of his arrest.* That being true, appellant's refusal to submit to a blood-alcohol test was justified and does not present grounds for the revocation of his license under the implied consent law. [Cits.] ... We are fully aware of the decisions embracing substantial compliance with certain notice requirements, but here the legislature and the Supreme Court have clearly spoken.' (Emphasis supplied.) *Adams v. Hardison,* 153 Ga. App. 152, 153 (264 SE2d 693) (1980). While the opinion in *Adams* does not reflect it, the record in that case demonstrates that, at the jail and before he refused to undergo the state-administered test, the defendant-motorist had in fact been advised of his rights to an additional test.

"Based upon the foregoing, in a case in which the defendant-motorist has in fact been given notice of his right to an additional test, it is unclear exactly how the proper judicial determination of the sufficiency of compliance with Code Ann. § 68A-902.1 (a) [OCGA § 40-6-392 (a)] should be made. Therefore, the Court of Appeals desires instructions from the Supreme Court upon the following questions, a determination of which is necessary for a decision in this case:

"1. Did the Court of Appeals in *Adams,* 153 Ga. App. 152, supra, correctly construe *Garrett,* 237 Ga. 413, supra, to mean that unless the defendant-motorist has been informed of his right to an additional test at the very time and scene of the physical arrest, such failure on the part of the law enforcement officer invalidates the result of any subsequent state-administered test and also justifies the refusal to submit to such a test?

"2. Or, does *Garrett,* 237 Ga. at 415, supra, implicitly establish a broader 'intelligent choice' standard of compliance, correctly effectuated by the Court of Appeals in *Rayburn,* 140 Ga. App. 712, supra, and in *Huff,* 144 Ga. App. 764, supra, so that the requirements of Code Ann. § 68A-902.1 (a) (4) are substantially satisfied if, prior to choosing whether to undergo or to refuse the state-administered test, a defendant-motorist is advised of his right to an additional test and his subsequent 'intelligent choice' in this regard is binding on him?"

In order to answer these questions it is necessary to examine the

facts of the case out of which they arose.

The defendant and his wife were stopped by a Columbia County deputy sheriff after the deputy observed a beer bottle fall from the passenger side of the couple's moving pick-up truck. The deputy testified that he initially intended to issue a citation for littering, but when the defendant stepped from his truck, the deputy detected that the defendant's speech was "slurred" and his movements were "unstable." The deputy also smelled alcohol on the defendant. The deputy testified that he informed the defendant he was under arrest for driving under the influence; he then inquired of defendant's wife whether he could call someone to drive her home as it was apparent she was too intoxicated to drive herself. The deputy testified that at this point the defendant's wife became verbally abusive and also began hitting and kicking him. The defendant refused to get into the patrol car and struck the deputy; the deputy struck the defendant in retaliation.

Several eyewitnesses to these events corroborated the deputy's testimony and testified that they observed the defendant's wife jump on the deputy's back, "clawing and kicking" as the deputy attempted to place her husband in the patrol car. Two by-standers were required to restrain Mrs. Perano; both testified she was "hysterical" and "screaming" for the police to be called.

The defendant was taken to a local hospital where another law enforcement officer asked him to submit to a chemical analysis of his blood. At this time the officer informed the defendant of his right to an independent chemical analysis by an expert of his own choosing pursuant to OCGA § 40-6-392 (a) (3) (Code Ann. § 68A-902.1 (a) (3)). It is not disputed that the defendant was not made aware of these rights at the time of his physical arrest. The defendant consented to the state-administered chemical analysis, but made no request for an independent test. An analysis of the defendant's blood showed that while his blood alcohol level was .01, .40 milligrams per decimeter of methaqualone was present.

Prior to trial the defendant made a motion to suppress the results of these tests, arguing that since he had not been advised at the time of his arrest of his right to an independent chemical analysis, the results were not admissible in evidence. See, OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1). The trial court denied his motion. At trial the results of these tests were admitted in evidence.

The jury found defendant guilty of "driving under the influence of a drug," but not guilty of charges of disorderly conduct. The defendant's wife was convicted of public drunkenness and disorderly conduct.

OCGA § 40-6-392 (Code Ann. § 68A-902.1) provides for the use

of chemical tests for alcohol or drugs in blood in a *civil or criminal* action arising out of events where a person is allegedly operating a motor vehicle under the influence of alcohol or drugs. This code section provides for the procedures to be used where the state administers the test. Section (a) (3) of the statute gives the accused the right to "have a physician or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." Section (a) (4) provides, in part, that "[t]he arresting officer *at the time of arrest* shall advise the person arrested of his right to a chemical test or tests according to this Code section." (Emphasis supplied.)

The requirement under OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1) that the arresting officer advise the accused of his right to an independent chemical analysis applies both to the situation where the accused seeks to prevent the results of the state's test from being admitted in evidence at trial, *Nelson v. State,* 135 Ga. App. 212 (217 SE2d 450) (1975), and where the state attempts to suspend the accused's driver's license under OCGA § 40-5-55 (c) (Code Ann. § 68B-306) for refusal to submit to the state-administered test. *Garrett v. Dept. of Public Safety,* supra. Further, the statute mandates that this advice be given "at the time of arrest." OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1). As pointed out in *Garrett,* supra, "[t]his [directive] cannot be interpreted to mean sometime in the future. One cannot make an intelligent choice to submit to a chemical test without the knowledge of the right to have an independent test made in order to contest the validity of the state's test." 237 Ga. at 415. If this advice is never given to the accused, it is clear that the state may neither introduce the results of its chemical analysis at trial nor may it suspend the accused's driver's license for refusal to submit to its test. *Nelson* and *Garrett,* supra. The question put to us, however, is whether it is necessary, in all circumstances, to administer this advice at the precise point of physical arrest.

The legislature has recognized that, in most instances, the only time at which this advice will be meaningful is at the time of physical arrest. However, we acknowledge that certain limited situations may exist where advising the accused at the moment of physical arrest would not enable the accused to make an intelligent choice concerning the state's request and his right to undergo an independent test. We believe that the facts of the case before us present such a situation. From our study of the record we conclude

that the fracas which occurred between the Peranos and the arresting officer would have rendered any notice of a right to an independent blood analysis meaningless if given at the time of physical arrest. It was not inappropriate, in this situation, for the officer to advise Mr. Perano of this right at the hospital prior to the administration of the state's test. The evidence shows that, by this time, Mr. Perano was calm and receptive to the rights read to him by the attending officer.

We conclude that where a law enforcement officer requests a person to submit to a chemical test because of acts alleged to have been committed while operating a motor vehicle under the influence of alcohol or drugs, and the officer arrests that person on this ground, OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1) requires that the officer inform him *at the time of arrest* of his right to an independent chemical analysis to determine the amount of alcohol or drugs present in his blood. Under ordinary circumstances, where this advice is not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs. Further, where, in the ordinary situation, this advice is not given at the time of arrest, the state may not use the accused's refusal to submit to the state-administered test to suspend his driver's license under OCGA § 40-5-55 (c) (Code Ann. § 68B-306).

*Certified questions answered. All the Justices concur, except Hill, C. J., and Marshall, P. J., who dissent.*

Decided March 1, 1983 —
Rehearing denied March 23, 1983.

*Foss & Boone, Jack E. Boone, Jr., Batson & Shurtleff, John P. Batson,* for appellants.

*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.

*Joseph L. Chambers, Charles T. Shean III,* amicus curiae.

Hill, Chief Justice, dissenting.

The Court of Appeals has certified two questions to this court. Although I agree with the result of the majority decision as applied to the facts in this case and therefore might concur specially, because I respectfully disagree with the majority's answer to the two certified questions, I must dissent.

I would answer the first certified question in the negative and would answer the second certified question in the affirmative. In my

view, the General Assembly, in enacting OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1), did not use the word "arrest" in the phrase "at the time of arrest" in the instantaneous, technical legal sense that we have come to understand an "arrest" in Fourth Amendment cases. E.g., *State v. Reid,* 247 Ga. 445 (276 SE2d 617) (1981).

In my view, the General Assembly used the word "arrest" in a broader sense, meaning "custody." Thus, as I understand the intent of the General Assembly in enacting OCGA § 40-6-392 (a) (4) (Code Ann. § 68A-902.1), it was that the defendant-motorist be advised at the time of the original custody, and prior to the time the defendant-motorist must decide whether to undergo or refuse the state-administered test, that he or she has the right to an additional test.

I respectfully submit that my answers to the two certified questions (see above) provide the defendant-motorist with full opportunity to make an intelligent choice as to whether to undergo or refuse the state test, comport with the common sense intent of the General Assembly, and provide a clear dividing line between those cases in which the result of the state-administered test is admissible or inadmissible (or the fact of the defendant's refusal to undergo the test is admissible or inadmissible). Unfortunately, the majority's answers require a case-by-case determination. For these reasons, I cannot agree with the answers given and therefore dissent.

I am authorized to state that Presiding Justice Marshall joins in this dissent.