### 76647. HIGHSMITH v. CITY OF WOODBURY.
(375 SE2d 79)

SOGNIER, Judge.

Johnny Highsmith was convicted at a bench trial of driving under the influence of alcohol and he appeals.

The record reveals that on the date in issue, Officer Floyd Burger saw appellant drive a pickup truck out of a convenience store parking lot and observed the truck weaving in the road. Burger followed appellant and stopped him about two-and-a-half miles from the convenience store. Burger asked appellant to step out of the truck, and noticed that appellant staggered in getting out, and that appellant's speech was slurred. When Burger asked appellant if he had been drinking, appellant responded yes. Burger testified there was an odor of alcohol on appellant and that he was able to stand only by propping himself against the side of the truck. Officer Jack Clark, who was with Burger when appellant was stopped, testified that appellant was "really intoxicated," and could hardly stand up.

After speaking with appellant for five or ten minutes, Officer Burger arrested appellant for driving while intoxicated at 1:28 p.m. The radio operator's report indicates appellant was at the police department by 1:46 p.m., at which point appellant was informed of his implied consent rights and signed a document reflecting he had been informed of these rights but that he refused to take the requested State-administered chemical test.

1. Appellant contends the trial court erred by denying his motion in limine seeking to suppress evidence of his refusal to permit the State to conduct chemical testing of his blood alcohol level. He argues that under the holding in *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983), evidence of his refusal to submit to a test was not admissible because he was not advised of his right to an additional test *at the time of his arrest.*

OCGA § 40-6-392 (c) provides: "In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him." The opinion in *Perano*, supra, rendered prior to the enactment of OCGA § 40-6-392 (c), involved a defendant who submitted to chemical analysis then later argued the test results were inadmissible because he was not informed of his implied consent rights at the time of his arrest. The Supreme

Court in *Perano* interpreted language virtually identical to that in OCGA § 40-6-392 (a) (4) (Ga. L. 1983, p. 100, § 14), which provides: "Upon the request of the person *who shall submit to a chemical test or tests at the request of a law enforcement officer*, full information concerning the test or tests shall be made available to him or his attorney. The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section." (Emphasis supplied.) The Supreme Court in *Perano* established the general rule that where an accused is not informed of his implied consent rights "at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant," id. at 708, the results of the state-administered test are not admissible at trial to show that the accused was driving under the influence of alcohol or drugs. Thus, the Supreme Court rejected a "substantial compliance" standard in regard to the statute and approved an exception to the statutory requirement only after a case-by-case determination whether "advising the accused at the moment of physical arrest would not enable the accused to make an intelligent choice concerning the state's request and his right to undergo an independent test." Id. at 707.

OCGA § 40-6-392 (c) changed the law in Georgia as to the admissibility of evidence regarding an accused's refusal to permit chemical analysis to be conducted. See *Wessels v. State*, 169 Ga. App. 246, 247-248 (2) (312 SE2d 361) (1983); see also *Stacey v. Caldwell*, 186 Ga. App. 293, 294 (367 SE2d 73) (1988). However, while *Perano* has been cited or followed in numerous cases since the enactment of OCGA § 40-6-392 (c) in cases where the defendant-motorist submitted to chemical testing then challenged the admissibility of the state-administered test, see, e.g., *Whittington v. State*, 184 Ga. App. 282, 284 (361 SE2d 211) (1987); *Hadden v. State*, 180 Ga. App. 496, 497 (1) (349 SE2d 770) (1986); *Osteen v. State*, 176 Ga. App. 722, 723 (1) (337 SE2d 369) (1985), in only one case has the *Perano* rule been discussed where a defendant-motorist refused to submit to testing. In that opinion, *Allen v. State*, 254 Ga. 433, 434 (2) (330 SE2d 588) (1985), the defendant-motorist had refused to submit to testing and asserted his refusal was inadmissible because the arresting officer, who had uncontrovertedly advised the defendant of his implied consent rights, refused him the right to have an independent test conducted. The Supreme Court acknowledged that "[a] defendant's refusal to take a blood test is certainly relevant and probative in a case such as this one. [Cit.]" Id. at 434 (1) (c). Without discussion of what ramifications the enactment of OCGA § 40-6-392 (c) had, if any, on the *Perano* rule, the Supreme Court simply determined that the evidence demonstrated the requirements of OCGA § 40-6-392, as interpreted in *Perano*, supra, had been complied with. *Allen*, supra at 434 (2).

Assuming from *Allen* that under *Perano*, failure to advise timely a defendant-motorist of his implied consent rights renders inadmissible into evidence not just the test results of an accused who *submitted* to testing but also evidence that the accused *refused* to submit to testing, irrespective of OCGA § 40-6-392 (c), we nevertheless find no reason to reverse the trial court's determination that evidence here of appellant's refusal to permit testing was admissible. We find *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985) and *Fore v. State*, 180 Ga. App. 196 (348 SE2d 579) (1986) applicable here. In *Mason*, although the defendant was detained for some 20 to 30 minutes while the officer finished his investigation of the accident before being advised of his implied consent rights, we found that "[g]iven the more immediate concerns of the arresting officer in the present case with completing his investigation of the accident scene and dealing with the hazard created by the wrecked vehicle, and *given the fact that it would have been of no conceivable benefit to the defendant to have been informed of his implied consent rights any earlier*, we hold that the advice was given as soon after the moment of the arrest as was reasonably practical." (Emphasis supplied.) Id. at 186 (2). The Supreme Court denied the defendant's application for certiorari in that case. 177 Ga. App. 898. Subsequently, in *Fore*, supra, this court found no merit in defendant's argument that a 20 to 25 minute delay in the giving of his implied consent rights rendered inadmissible defendant's intoximeter test results. In *Fore*, the only exigent circumstance presented was the fact that after arresting and detaining defendant, the arresting officer received a call and drove to arrest another driver before informing his passenger of his implied consent rights. Noting "the fact that this appellant would likewise have in no way benefitted by being informed of his rights any earlier," this court concluded that "the advice was given as soon after the moment of arrest as was reasonably practical in compliance with the statutory scheme." Id.

The record in the case sub judice reveals that Officer Burger arrested appellant at 1:28 p.m. and informed him of his rights at 1:46 p.m. Like *Mason* and *Fore*, supra, the record reflects no conceivable benefit to appellant had he been informed of his rights at an earlier point. Appellant having been informed of his implied consent rights at a time enabling him to exercise those rights in a meaningful fashion, and in view of the language of OCGA § 40-6-392 (c) authorizing the admission of evidence of an accused's refusal to permit testing, we find no error in the trial court's admission of this evidence.

2. Finally, even if the evidence regarding appellant's refusal to submit to chemical analysis of his blood alcohol level was "inadmissible, appellant has no grounds for complaint unless he could show some harm caused by [its] admission. In view of the nature of the

arresting officers' testimony, the [refusal testimony] was mere 'window dressing' which by no stretch of the imagination could have injured the appellant." *Garrett v. State*, 146 Ga. App. 610, 611 (2) (247 SE2d 136) (1978). That evidence showed appellant's truck was weaving on the road, that appellant smelled of alcohol, was unsteady, and could barely stand. Appellant admitted having been drinking and one officer testified appellant was "really intoxicated." "It is not necessary that the defendant be so under the influence as to be incapable of driving. It is necessary only that he be under the influence to a degree which renders him less safe or incapable of driving safely. [Cit.] . . . This evidence was sufficient to submit to the [factfinder] to determine whether defendant . . . was less safe than he would have been had he not been affected by alcohol. [Cits.] The record reflects that a rational trier of fact could reasonably have found proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); [cit.]" *Howell v. State*, 179 Ga. App. 632, 634 (1) (347 SE2d 358) (1986).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 12, 1988 —
REHEARING DENIED OCTOBER 31, 1988 —

*Virgil L. Brown*, for appellant.
*Daniel W. Lee*, for appellee.