A92A1930. VANDIVER v. THE STATE.
(429 SE2d 318)

BEASLEY, Presiding Judge.

Vandiver was convicted of driving under the influence of alcohol (OCGA § 40-6-391), driving with a suspended license (OCGA § 40-5-121), and driving with an open container (OCGA § 40-6-253). He appeals.

Deputy Sheriff Daniel testified that on December 7, 1991, while on duty in a patrol car, he encountered two vehicles parked on the side of the road at an intersection. One, a Cutlass owned by Vandiver, was partially in the roadway and Vandiver was standing at the passenger's side. His wife Julie was inside in the passenger's seat. Crystal Cherry was standing at the passenger's side of the other vehicle, a limousine, and the passenger's seat was occupied by a "Hispanic male." Daniel radioed headquarters that he was going to investigate suspicious persons, turned his car around and returned to the intersection.

Observing that Vandiver held an open beer bottle, the deputy radioed for back-up help. When Officer Brumbalow arrived "two or three minutes" later, they approached Vandiver and asked for his driver's license and proof of insurance. Although Daniel did not see Vandiver drink from the beer bottle, he detected an odor of alcoholic beverage on his breath and described him as "real talkative." In the back seat of Vandiver's car, he saw a still-cold empty beer bottle and two beer cases, one empty and the other containing three or four unopened bottles.

An alcosensor test of Vandiver's breath was positive, so Daniel placed him in the back of the patrol car, ran a check on his driver's license and called for a wrecker. He then took Vandiver to jail, where there was an Intoximeter 3000 machine and a qualified operator; he read the implied consent warning, but Vandiver refused to blow into the machine.

1. Appellant asserts that the court erred in allowing evidence of his refusal to take the state-administered blood alcohol test because the arresting officer failed without cause to read the implied consent warning at the time of his arrest as required by OCGA § 40-6-392 (a) (4). He relies upon *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983), in which the Supreme Court held that "where a law enforcement officer requests a person to submit to a chemical test because of acts alleged to have been committed while operating a motor vehicle [while] under the influence of alcohol or drugs, and the officer arrests that person on this ground, OCGA § 40-6-392 (a) (4) . . . requires that the officer inform him *at the time of arrest* of his right to an independent chemical analysis to determine the amount of alcohol or drugs present in his blood. Under ordinary circumstances, where this advice is not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs. Further, where, in the ordinary situation, this advice is not given at the time of arrest, the state may not use the accused's refusal to submit to the state-administered test to suspend his driver's license under OCGA § 40-5-55 (c)." *Perano* did not address the admissibility, at the criminal trial, of a defendant's refusal to take a breath test.

Nevertheless, *Perano* requires reversal. It construed OCGA § 40-6-392 (a) (4) narrowly, to mean almost literally what it said. The broader view of the two dissenters, which would have allowed the information to be given *prior to the police request to take the intoximeter test*, at a meaningful time in proximity to arrest was rejected. The Court ruled that failure to timely inform renders the state-administered test results inadmissible as evidence, where defendant

took that test; it also precluded license suspension for refusal to take the state-administered test, where defendant refuses the test.

Although the Court did not address the effect of the failure on the admissibility of the refusal, under OCGA § 40-6-392 (d), in a prosecution for driving under the influence, it must follow that such is inadmissible also. If test results are inadmissible against defendant because of the invalid procedure, then so is the refusal inadmissible against him, because the refusal is justified. A defendant is not required to take the test if he has not been properly informed of his implied consent rights.

Vandiver was not informed at the time of his arrest, and there were no peculiar circumstances to warrant a delay. There *were* such peculiar circumstances in *Perano*, as we ruled on remittitur. *Perano v. State*, 167 Ga. App. 560 (1) (307 SE2d 64) (1983). In Vandiver's case, however, the officer testified without contradiction that after defendant was arrested and put in the back seat of the patrol car, he ran a check on his driver's license, called and waited for a wrecker to come and pick up defendant's car, and then took him to jail before he gave the required information. He testified that there was no reason for its not being given earlier other than that it is their standard practice to wait until they get to the jail.

The refusal in this case, having been justified, was not subject to the evidentiary rule of subsection (d).

2. Appellant is entitled to a new trial, without that evidence. Even in its absence, he would not have been entitled to a directed verdict on either of the grounds he advances. See *Wood v. Hamilton*, 109 Ga. App. 608, 612 (7) (137 SE2d 61) (1964).

*Judgment reversed. McMurray, P. J., Carley, P. J., Cooper, Andrews, Johnson and Blackburn, JJ., concur. Pope, C. J., and Birdsong, P. J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

I dissent from the majority's finding that we are bound by *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) to hold that under OCGA § 40-6-392 (a), evidence of appellant's refusal to take a state-administered blood test was inadmissible because the officer failed to read the implied consent warning to him at the precise moment of his arrest.

1. The issue is controlled by OCGA § 40-6-392 (d), not by *Perano*. The legislature specifically gives the state the right to admit evidence of the "refusal of the defendant to permit a chemical analysis *to be made* of his blood, breath, urine, or other bodily substance *at the time of his arrest*." (Emphasis supplied.) OCGA § 40-6-392 (d).

*Perano* did not address subsection (d) at all. It did not address admissibility of a defendant's refusal to take a chemical test per-

formed in accordance with § 40-6-392 (a) (1), that is, a test "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose." Appellant was deemed to consent to this official chemical test by § 40-5-55 (a), and his refusal to take it is expressly made admissible by subsection (d) of § 40-6-392.

A state-administered chemical test pursuant to § 40-6-392 (a) (1) cannot properly be given at the precise moment of arrest on the roadway. Whatever the legislature meant by requiring that a defendant be advised of his right to an independent test "at the time of his arrest" in § 40-6-392 (a) (4), the reference *in subsection (d)* to the refusal of the defendant to permit a chemical analysis of his blood, breath, urine, or other bodily substance "to be made at the time of his arrest" (id.), is in another context, and *necessarily* refers to the time in proximity to his arrest when the State can properly administer the official test under § 40-6-392 (a) (1).

The defendant's right to an additional test under § 40-6-392 (a) (3) is a right "in addition to" any chemical test administered at the direction of a law enforcement officer. The right arises when he permits a state-administered chemical test to be made under subsection (a) (1); such a test obviously can be administered only *after* he has been taken to the location where a test described by § 40-6-392 (a) (1) can properly be made. Advising him "at the moment of his arrest on the road" of his right to an additional test would give appellant no benefit, for he has that right only if he permits a chemical test "to be made" (id. at (d)) when it can properly be made.

Therefore, the full context of "the time of his arrest" in subsection (d) of § 40-6-392 refers to appellant's refusal to permit a chemical analysis "to be made . . . at the time of his arrest," i.e., when he is asked to submit to it. It cannot possibly mean "at the precise moment of his arrest on the road," because an approved state-administered chemical test of his "blood, breath, urine, or other bodily substance" usually cannot be given on the road. OCGA § 40-6-392 (d) allows admission in evidence of a defendant's refusal to take the state-administered test when he is asked to submit to it, that is, when the police can properly administer it.

2. Under the majority's construction, *Perano* obliterates the "implied consent" law, which the legislature provided so that any person operating a vehicle in the State of Georgia "shall be deemed to have given consent," subject to OCGA § 40-6-392 to a chemical test to determine the alcohol or drug content of his blood. OCGA § 40-5-55. This appellant refused to take the state-administered test for no reason that caused him any harm. Whatever the legislature meant in § 40-6-392 (a) (4) by saying that the arresting officer "at the time of

arrest" shall advise the person arrested of his rights to an independent chemical test, it meant something different from subsection (d) of § 40-6-392 by providing that the defendant's refusal to permit a "chemical analysis to be made . . . at the time of his arrest" shall be admissible against him. The State's chemical test cannot be "made" at the precise moment of arrest on the road. It can only be "made" when he is asked to submit to it.

Even if the *results* of the state test may be excluded under *Perano* in some cases, under § 40-6-392 (d) the admission of the defendant's "refusal . . . to . . . permit" a chemical analysis is not a matter of judicial negotiation. That is, "the time of his arrest" referred to in subsection (d) is when the state's chemical analysis can be made, and is a more broad proximal time of arrest, which includes his being taken to jail and asked to submit to the state test.

It is one thing to exclude the *results of the state test* when the defendant was not given a "meaningful" opportunity to have an independent test (*Perano*, supra) but it is quite another thing, and violates § 40-6-392 (d), to prohibit the state from its statutory right to admit his *refusal* to "permit a chemical analysis to be made . . . at the time of his arrest."

We note also that under OCGA § 40-6-392 (a) (3), even the "justifiable failure or inability" to obtain an [independent] test shall not preclude the admission of [results of the state test]." This language speaks strongly of the legislative intent on this subject. We do not think the legislature or *Perano* meant to let a defendant refuse to take the state test in violation of § 40-5-55, and then prevent the admission of his refusal expressly allowed by § 40-6-392 (d), when he was not prejudiced by a failure to tell him at the instant of his arrest on the road of his right to an independent test.

3. Moreover, although the advice in *Perano* was not given at the moment of arrest, the evidence in *Perano* was held admissible. Thus, *Perano* does not create an absolute embargo on all evidence relative to the suspect's condition if he was not advised at the moment of arrest on the road.

Although appellant was not advised of his right to an independent test at the moment he was taken into custody, he was properly advised prior to the police request to take the intoximeter test while he had an unfettered opportunity to have an independent test. This was a "meaningful" time, and "a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." Id. at 707, 708. Even following *Perano*, the circumstances of this case do not warrant allowing defendant to refuse to take the state test merely because he was not told at the moment of his arrest that he could have an independent test. Such a result flies in the face of §§ 40-6-392 (d) and 40-5-55. The legislature may clarify the variable

use of "time of arrest" in § 40-6-392 (a) (4) and in subsection (d), but *Perano* does not require us to suppress evidence specifically allowed by OCGA § 40-6-392 (d).

What we are talking about is a defendant's unjustified refusal to take the test, and the majority has ruled that he may do so with impunity even though he was caused no harm or even inconvenience by not being told of this right until prior to being asked to submit to the state's chemical test at the jail. But appellant was given the advice while he still had the opportunity to have an independent test made; he was not denied an independent test; and nothing prevented him from having an independent test made except his own refusal to permit state-administered "chemical analysis to be made . . . at the time of arrest." OCGA § 40-6-392 (d). In fact, in view of the known tendency of blood-alcohol content to diminish in time, a delay was in appellant's favor.

Even construing the Code narrowly, as the majority says we must, we find no harm to appellant in the procedure in this case. The state is not trying to introduce prejudicial evidence which arose before appellant was given the proper advice; his refusal to take the state-administered test occurred after he was given the proper advice at a "meaningful" time and when he had suffered no prejudice. Under § 40-6-392 (d), the state has a statutory right to admit this evidence of his refusal. He should not be allowed to benefit from his refusal to take the state-administered test, on account of a non-prejudicial delay in advising him of his implied consent rights.

That a refusal to submit to the test may create an inference that the test would show the presence of alcohol, see *Givens v. State*, 199 Ga. App. 709 (405 SE2d 898); *Mendoza v. State*, 196 Ga. App. 627, 629 (2) (396 SE2d 576); *Shults v. State*, 195 Ga. App. 525, 528 (3) (394 SE2d 573); *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801). This was evidence which, in view of the public's interest in the use of our highways by intoxicated drivers, the state ought to be allowed to introduce. The state should be permitted to show that the driver who had already failed a field test (alcosensor) refused to take the police-administered test when he was advised of his rights at a "meaningful" time, especially when he was not harmed by the procedure used. The balance of policy interests in such a situation does not weigh in appellant's favor, especially when he had already failed the field test for illegal intoxication and driving under the influence.

I conclude that under proper interpretation of OCGA § 40-6-392 (d), the state is expressly allowed to admit evidence of appellant's refusal to permit a chemical test to be *made when he is arrested*, i.e., *at the proximal time of arrest when he is asked to submit to it*.

I respectfully dissent. I am authorized to state that Chief Judge Pope joins in this dissent.

DECIDED MARCH 16, 1993.

*Cook, Noell, Tolley & Wiggins, Morton M. Wiggins III*, for appellant.

*Donald E. Moore, Solicitor*, for appellee.