### A93A1307. CLAPSADDLE v. THE STATE.
(432 SE2d 262)

BLACKBURN, Judge.

On March 5, 1992, Tim Clapsaddle, appellant, was tried and convicted of driving under the influence of alcohol, making him a less

safe driver, and driving under the influence of alcohol with an unlawful blood alcohol level of .10 or more, both in violation of OCGA § 40-6-391. After Clapsaddle's motion for new trial was denied, he appealed his conviction.

1. In his first enumeration of error, Clapsaddle asserts that the trial court erred in admitting into evidence, over his objection, the result of the intoximeter test. Clapsaddle objected to the admissibility of the result on the ground that he was not advised of his implied consent rights, at the time of his arrest, pursuant to OCGA § 40-6-392 (a) (3) and (4).

OCGA § 40-6-392 (a) sets forth guidelines for the admissibility of evidence of the amount of alcohol or drug in a person's bodily fluids, as determined by a chemical analysis of the person's bodily fluids. Subparagraph (a) (3) provides that "[t]he person tested may have a physician . . . of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." OCGA § 40-6-392 (a) (4) provides, in pertinent part, that "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section."

The Georgia Supreme Court determined in *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983), that "the statute mandates that this advice be given 'at the time of arrest.' . . . '[T]his (directive) cannot be interpreted to mean sometime in the future.'" In the present case, however, it is uncontroverted that the arresting officer did not inform Clapsaddle, at the time of his arrest, of his right to an independent chemical analysis. Deputy Hardman, of the Jackson County Sheriff's Department, testified that he informed Clapsaddle of his implied consent rights at the police station approximately one hour after he had arrested Clapsaddle.

In *Perano*, supra, the Supreme Court was faced with answering a certified question regarding whether, under all circumstances, it was necessary to inform the defendant of his implied consent rights precisely at the point of physical arrest. The court concluded, "[u]nder ordinary circumstances, where this advice is not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs." *Perano*, supra at 708. The court did recognize limited situations "where advising the accused at the moment of physical arrest would not enable the accused to make an intelligent choice concerning the state's request and his right to undergo an independent test." Id. at 707.

The circumstances of Clapsaddle's arrest make it abundantly clear that he should have been advised of his implied consent rights

at the time of his arrest, rather than one hour later. Hardman made a traffic stop of Clapsaddle's vehicle for Clapsaddle's failure to dim his bright headlights. Hardman detected an odor of alcoholic beverage about Clapsaddle and requested an alco-sensor test. Upon testing positive for alcohol, Hardman arrested Clapsaddle for the offense of driving under the influence of alcohol and placed him in the back seat of his patrol car. Hardman testified that he did not observe Clapsaddle violate any other traffic law other than failure to dim his headlights. Furthermore, Hardman testified that Clapsaddle was cooperative and coherent.

"There is no indication that [Clapsaddle] was too intoxicated to understand the warnings, compare *Rogers v. State*, 163 Ga. App. 641, 643 (295 SE2d 140) (1982), or too emotionally distraught, compare *Hadden v. State*, 180 Ga. App. 496-497 (1) (349 SE2d 770) (1986), or that [Hardman] was delayed by the exigencies of his duties, compare *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985); *Fore v. State*, 180 Ga. App. 196 (348 SE2d 579) (1986), or that [Hardman] was unaware that [Clapsaddle] would be charged with violating OCGA § 40-6-391. See generally *Whittington v. State*, 184 Ga. App. 282, 284 (361 SE2d 211) (1987)." *State v. Fleming*, 202 Ga. App. 774, 776 (2) (415 SE2d 513) (1992). We must conclude, therefore, that the trial court erred in admitting into evidence, over Clapsaddle's objection, the result of the intoximeter test.

2. In his second enumeration of error, Clapsaddle contends that the trial court erred in allowing Hardman to testify as to his opinion that Clapsaddle was under the influence of alcohol to the extent that it was less safe for him to drive. Clapsaddle argues that Hardman's opinion was not supported by a proper evidentiary foundation and, therefore, it should not have been allowed. The foundation for Hardman's opinion was his experience dealing with and testing individuals who had consumed quantities of alcohol, as well as his observations of Clapsaddle. This evidence was admissible. See OCGA § 24-9-65; *Gilbert v. State*, 150 Ga. App. 339 (258 SE2d 27) (1979); *Grier v. State*, 72 Ga. App. 633 (34 SE2d 642) (1945). Clapsaddle's second enumeration of error is, therefore, without merit.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JUNE 4, 1993.

*McArthur & McArthur, John J. McArthur, Jeffrey A. Rothman*, for appellant.
*Donald E. Moore, Solicitor*, for appellee.