## A95A1968. HALL v. THE STATE.
### (467 SE2d 206)

ANDREWS, Judge.

Antoniony Lenton Hall appeals from the judgment entered against him in his jury trial for homicide by vehicle in the first degree.[1] We affirm.

Viewed with all inferences in favor of the jury's verdict, the evidence was that on March 21, 1994, Demons was living with her mother and other family members in a house on the south side of Hoey Street. Her mother looked after three children, including Demons' cousin, Tyesha, age two. Demons helped her mother with the babysitting chores occasionally and was doing so on that day.

Around 5:00 p.m., Tyesha and the other two children, ages four and three, were playing in the front yard when Demons went to the mailbox, located diagonally across Hoey Street which was 21.4 feet wide. Parker's house was on the same side of the street and to the left of Demons' mailbox as Demons approached the box. Parker had just arrived home from work and was on her front porch when she saw Hall, her neighbor, come over the hill to her right in his Pontiac Sun-

---

[1] Hall was also convicted of DUI for being in control of a moving vehicle with an alcohol concentration of .10 grams or more. The court merged this offense into the homicide by vehicle charge.

bird traveling east. According to Parker, Hall was going about 25 mph. Parker then saw Tyesha take some steps into the street, apparently heading for Demons. The car driven by Hall struck and killed Tyesha.

Sergeant Hill of the State Patrol was the investigating officer and was called to the scene by Deputy Sheriff Hobbs. Hill testified that he looked in Hall's car and saw an open twelve-pack of beer in the rear floorboard, with at least one open can, and that Hall had an odor of alcohol about him and his speech was slightly slurred. A blood alcohol test was administered, reflecting a blood alcohol level of .12 grams.

Hill was qualified as an expert in accident reconstruction and, based on his investigation, opined that the spot of impact was seven feet from the south edge of Hoey Street, two hundred feet below the crest of the hill over which Hall had traveled, and eighty-four feet beyond Parker's driveway. He further testified that he saw a mark on the front of Hall's car on the driver's side. Based on his analysis, Trooper Hill concluded that, from the crest of the hill to the point of impact, the stopping distances and times at various speeds were as follows: 20 mph, 19.04 feet and 1.3 seconds; 25 mph, 29.76 feet and 1.62 seconds; 30 mph, 42.85 feet and 1.95 seconds. He further opined that there was adequate distance for Hall to stop before striking Tyesha at any of these speeds.

Hill also testified that Tyesha had been taken by ambulance to the hospital when he arrived on the scene at 5:22 p.m. and that, before he could complete his investigation including questioning the three men in the two cars and Parker, relatives of the child had returned from the hospital and begun to congregate on the scene, screaming and crying. Because of the agitation of the growing crowd and concern for Hall's safety, Hill put Hall under arrest, placed him in the patrol car and was driving away from the scene before he read Hall his implied consent rights at approximately 6:00 p.m.

Flournoy was a passenger in Hall's car and stated that as they topped the hill, he "kinda glimpsed something" on the right side of the street. Marshall, another friend, was following Hall and Flournoy in a second car. The three had been playing basketball with three other men for a couple of hours and were on the way to another basketball court when the accident occurred. According to all three men, each had had two beers from a twelve-pack during the game. Hall had stopped and purchased the second twelve-pack on the way to the second basketball court.

1. Hall's first enumeration is that the court erred in allowing into evidence the results of the blood test because Hill did not advise Hall of his implied consent rights "at the time of the arrest," based on *Clapsaddle v. State*, 208 Ga. App. 840, 841 (432 SE2d 262) (1993).

A pretrial hearing was held on Hall's motion in limine on this

ground which the court denied.

While Hall argues that Deputy Hobbs' description of the people at the scene should prevail over Sgt. Hill's, this court will not disturb the factual findings of a trial court on a motion to suppress or motion in limine if there is any evidence to support it, as there is here. *State v. Swift,* 232 Ga. 535, 536 (1) (207 SE2d 459) (1974); *Gray v. State,* 207 Ga. App. 648, 650 (2) (428 SE2d 663) (1993). Therefore, we consider the issue based on Sgt. Hill's description of the growing crowd of relatives and friends as "agitated."

In *Perano v. State,* 250 Ga. 704, 708 (300 SE2d 668) (1983), relied upon in *Clapsaddle,* supra, the Supreme Court concluded that, under OCGA § 40-6-392 (a) (4), "[u]nder ordinary circumstances, where this advice is not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs."

Clapsaddle, pulled over for a minor traffic violation initially, was not advised of his rights until he had been transported to the station over an hour later and no valid reason for the delay was presented. That is not the situation here.

Here, a two-year-old child had died and Hill was concerned that the child's relatives might be a threat to Hall. Under these circumstances, it cannot be said that waiting until he was driving away after having placed Hall under arrest was not as "timely, and practical a manner as dictated by the circumstances." *Martin v. State,* 211 Ga. App. 561, 562 (440 SE2d 24) (1993) (ten-minute delay due to officer's not having her implied consent warning card in her possession was not improper). Compare *State v. Lamb,* 217 Ga. App. 290 (456 SE2d 769) (1995) (30-minute delay because officer preferred to have card read in front of a witness was improper).

Therefore, there was no error in denial of the motion in limine and admission of the blood alcohol level.

2. Hall contends that a videotape of the accident scene, made by Hill on March 14, 1995, was improperly admitted over his objection that it was inaccurate, irrelevant and prejudicial.

Sergeant Hill made the video using the fixed camera in his patrol car. It records the accident scene as Hill made four passes of it at 20, 25, 30, and 35 mph. The only commentary on the video is Hill's statement of his speed and noting the accident location as he passed it.

(a) " '[A]n objection to evidence on the ground that it is irrelevant, immaterial and prejudicial is entirely too vague and general to present any questions for determination by the trial court, and the overruling of this objection does not constitute reversible error.' " (Citations omitted.) *Royal v. State,* 217 Ga. App. 459, 460 (2) (458 SE2d

366) (1995). *Moclaire v. State*, 215 Ga. App. 360, 365 (7) (451 SE2d 68) (1994).

(b) The remaining objection, which we address, was that the video did not accurately "depict the scene as it was that day [of the incident]." This objection was premised on the fact that Hill was driving a Ford Crown Victoria while Hall was driving a Pontiac Sunbird, a smaller car.

" 'Georgia follows a liberal policy in the admission of photographic (or videotape) evidence. Whether, under the evidence, the photograph or (video)tape is a fair and accurate representation of the scene sought to be depicted addresses itself to the discretion of the trial judge which will not be controlled unless abused.' (Citation omitted.) *Eiland v. State*, 130 Ga. App. 428, 429 (203 SE2d 619) (1973)." *Woods v. State*, 210 Ga. App. 172, 174 (2) (435 SE2d 464) (1993).

" 'Where (videotape) shot at a later time (is) used and there is testimony as to immaterial variations between the picture and the scene, the judge's decision to admit the pictorial representation will not ordinarily be reversed. (Cit.)' [Cit.]" *Cheeks v. State*, 203 Ga. App. 47, 50 (416 SE2d 336) (1992).

Here, Hill testified that the scene had not changed since the incident and that the purpose of the tape was to present an overview of the scene at different speeds for the jury. The State's contention was that Hall had adequate distance within which to stop before hitting Tyesha, had his reflexes not been impaired by alcohol. Hall's contention was that the child "darted" out in front of him and he had no chance to react. The videotape was properly admitted to allow the jury to evaluate the scene of the incident. There was no error.

3. Finally, Hall contends the court erred by charging to the jury the contents of OCGA § 40-6-391 (a) (1) (under the influence to the extent it is less safe to drive), when the DUI count of the indictment alleged that the crime was committed under OCGA § 40-6-391 (a) (4) (being in physical control of a vehicle with an alcohol concentration of .10 grams or more).

The court charged the jury on vehicular homicide in the first degree as follows: "when such person causes the death of another person without malice aforethought by driving or being in actual physical control of any moving vehicle while the accused's alcohol concentration is 0.10 percent grams or more in his bloodstream." The indictment charged that Hall caused the death of another person "through the violation of OCGA § 40-6-391. . . ."

As to the separate DUI charge, the court did charge both the "less safe to drive" and .10 grams methods by which DUI can be committed while the indictment specifically charged the .10 grams language.

In response to the court's inquiry after the charge was given, de-

fense counsel stated "I just want it on the record that the less safe charge that you gave to the jury, that my understanding from the accusation is that the DA decided to proceed on the physical control statute and not the less safe [one]."

Pretermitting the issue of whether the language above is sufficient to state a viable objection to the charge given, we conclude that the charge, as given, even assuming it to be erroneous, was not harmful to Hall and does not require a reversal. *King v. State*, 194 Ga. App. 69, 71 (4) (389 SE2d 500) (1989); *Sapp v. State*, 184 Ga. App. 527, 528 (3) (362 SE2d 406) (1987).

Here, in essence, the court advised the jury of a method of committing DUI which required an element in addition to the method under which Hall was indicted, i.e., that he was under the influence to the extent it was less safe for him to drive. Compare *Kevinezz v. State*, 265 Ga. 78 (454 SE2d 441) (1995). Further, as earlier noted, the court only instructed one method by which the homicide could be proven and merged the DUI conviction into the homicide conviction.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 19, 1996.

*Lucy J. Bell*, for appellant.

*Dennis C. Sanders, District Attorney, Durwood R. Davis, Assistant District Attorney*, for appellee.