A08A1013. LYNCH v. THE STATE.
(668 SE2d 264)

ADAMS, Judge.
Bernard F. Lynch was charged with driving under the influence of alcohol, violating a duty after striking an unattended vehicle, and obstruction of a law enforcement officer. He was convicted on the first two charges but acquitted of obstruction. Lynch moved for a

new trial and raised the issue of ineffectiveness of trial counsel. Following a hearing, the court denied the motion, and Lynch appeals.

> In order to succeed on a claim of ineffective assistance, [Lynch] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

*Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). On appeal "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

Construed in favor of the verdict and the court's findings, the evidence shows that at 1:00 a.m. on June 22, 2005, in a parking lot at a bar in Peachtree City, off-duty deputy Mike James of the Fayette County Sheriff's Department saw Lynch drive his car in reverse, go over a six-inch concrete curb, strike a blue Nissan Maxima, and begin to drive away. James also heard the crash. James was able to wave Lynch to a stop and talk to him briefly, during which James smelled alcohol coming from inside the car and saw that Lynch's eyes were "red and glassy." James told Lynch to turn the car off and that he had struck another car, which Lynch denied. When James went to the back of Lynch's car to get the tag number, Lynch left, "spinning tires." Officer Smiley of the Peachtree City Police Department responded to the scene to take over the investigation. He issued a be on the lookout (BOLO) based on the tag number but did not inform dispatch that the case involved a possible DUI. At trial, James testified about damage to the Nissan, as did Smiley. With regard to Lynch's car, James testified, "He took off so quick I never could see the damage." No analysis was done to determine if any paint from one car transferred to another.

At approximately 3:00 a.m., Smiley received a report that Deputy Ivey of the Coweta County Sheriff's Department had found Lynch and his car at a Waffle House in Newnan. During that time, Lynch admitted that the Coweta officer did not perform any kind of investigation for possible DUI. But the officers detained him pending arrival of Peachtree City officers.

When he arrived, Smiley found Lynch handcuffed in the back of a patrol car. Ivey turned Lynch over to Smiley, and Smiley proceeded to investigate Lynch for driving under the influence. Smiley observed that Lynch's eyes were bloodshot, that his breath and person smelled like alcohol, and that he had an unsteady gait. Lynch admitted that

YALE LAW LIBRARY

he had been drinking and that he had consumed "a couple of drinks." At trial, he admitted drinking four beers over the course of the evening. Smiley inspected Lynch's car and observed several scratches on the back right bumper that, he opined, matched the area on the car identified in the investigation as the part of the car that struck the Nissan. Smiley read Lynch his *Miranda* rights at 3:14 a.m. and his implied consent rights at 3:17 a.m. Lynch never responded to a question about whether he would take a breath test, which information was admitted at trial.

Lynch testified at trial and admitted that someone tried to flag him down after he had backed his car up to leave the parking lot of the bar, and he admitted that he did not stop. He also testified that while backing out, "It's possible I might've tapped a vehicle," but he denied knowing he had done so and he denied having jumped a curb. He also explained that his car had damage on the right rear from a separate event when another car struck him. Finally, he claimed to have asked to take a breath test but was refused.

1. Lynch contends trial counsel was ineffective in two regards. He first contends trial counsel failed to interview Coweta County Deputy Ivey and subpoena him for the hearing on the motion to suppress in order to establish that the implied consent warning was given in an untimely manner. He argues that Ivey had probable cause to arrest him for DUI 15 to 30 minutes before Fayette County law enforcement arrived at the scene and that therefore their failure to read him his implied consent rights during that time required suppression of his refusal to take a breath test.

Pursuant to OCGA § 40-6-392 (a) (4), implied consent must be read "at the time of arrest" or as close thereto as the circumstances might warrant:

> [W]here a law enforcement officer requests a person to submit to a chemical test because of acts alleged to have been committed while operating a motor vehicle under the influence of alcohol or drugs, and the officer arrests that person on this ground, OCGA § 40-6-392 (a) (4) . . . requires that the officer inform him *at the time of arrest* of his right to an independent chemical analysis to determine the amount of alcohol or drugs present in his blood. Under ordinary circumstances, where this advice is not given at the time of arrest, *or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant,* the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs.

(Emphasis supplied.) *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983). See also *Hough v. State*, 279 Ga. 711, 716 (620 SE2d 380) (2005) ("[I]mplied consent is triggered at the point that the suspect is not free to leave and a reasonable person in his position would not believe that the detention is temporary, regardless of whether a 'formal arrest' has occurred.").

Ivey testified at the hearing on the motion for new trial. He recalled a BOLO for Lynch and seeing a matching car at a Waffle House in Coweta County. Although Lynch admitted that he was the operator of the car, Ivey did not see Lynch drive. Ivey testified that he smelled the odor of alcohol coming from Lynch's "whole person," but he did not notice Lynch acting in an impaired manner, and, accordingly, did not conduct any field sobriety tests or further investigation. He testified that he did not read the implied consent warnings to Lynch because "[w]e didn't have any charges on him." He and other officers simply detained Lynch for about ten to fifteen minutes until Peachtree City officers arrived. Finally, trial counsel never interviewed Ivey about these details.

Trial counsel admitted that his motion to suppress possibly would have benefitted from establishing that Ivey had probable cause to arrest Lynch at the Waffle House. He admitted talking to Lynch about obtaining Ivey's testimony, but he did not talk to Ivey or the other officers, and he had no strategic reason for failing to do so.

The court found as a matter of fact that Lynch was "a lot more intoxicated than I thought he was at the time of sentencing." Lynch latches on to this finding, as well as other facts, to support his argument that the Coweta officers should have read him his implied consent rights while waiting for the Fayette officers to arrive. Nevertheless, the BOLO did not include information that Lynch was suspected of DUI, the Coweta officers never saw Lynch drive and did not notice Lynch acting in an impaired manner. And they merely detained him for approximately ten to fifteen minutes until Officer Smiley could arrive to follow up on the investigation that began in Peachtree City. Accordingly, Lynch has not shown that the Coweta officers had probable cause to arrest him before Smiley arrived.

Thus, even assuming that Lynch could be considered under arrest when he was first placed in the patrol car,[1] we find that he was read his implied consent rights at a time in as close proximity to the arrest as warranted under the circumstances.

> [T]he record reflects no conceivable benefit to appellant had he been informed of his rights at an earlier point. Appellant

---

[1] See generally *Bolden v. State*, 278 Ga. 459, 462 (3) (604 SE2d 133) (2004).

having been informed of his implied consent rights at a time enabling him to exercise those rights in a meaningful fashion, and in view of the language of OCGA § 40-6-392 [(d)] authorizing the admission of evidence of an accused's refusal to permit testing, we find no error in the trial court's admission of this evidence.

*Highsmith v. City of Woodbury*, 189 Ga. App. 58, 60 (1) (375 SE2d 79) (1988). Lynch therefore cannot show that the motion to suppress would have been granted if Ivey had been called as a witness, and, accordingly, the trial court did not err in denying the motion for new trial on this ground.

2. Lynch also contends trial counsel failed to interview and subpoena two fact witnesses who could have shown that damage to his car predated the alleged hit and run, which would have corroborated Lynch's own version of the story. The State argued that Lynch himself presented this evidence to the jury.

At the hearing on the motion for new trial, two witnesses testified they had knowledge that scratches on Lynch's car on the back right bumper predated the June 22, 2005 incident. And trial counsel testified that Lynch told him about the witnesses but that he never subpoenaed them and had no strategic reason for having failed to do so. Trial counsel admitted that it would have been important information for corroborating Lynch's testimony that he already had damage on his car.

But Lynch has not shown there is a reasonable probability that the trial result would have been different if the witnesses had been called. No State witness testified that the marks on Lynch's car resulted from the accident. James testified, "He took off so quick I never could see the damage." Smiley only testified that the marks were in the area on Lynch's car implicated by the reported accident. And the State's case was not dependent on finding that Lynch's car had been damaged but only on the fact that he had struck the blue car in the parking lot, for which there was unrebutted testimony of damage, a witness who saw and heard the collision, and even an admission by Lynch that he "might've tapped a vehicle." We find no error in the court's denial of the motion for new trial.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 16, 2008 —
RECONSIDERATION DENIED OCTOBER 8, 2008 —

*Joseph S. Key*, for appellant.

*Jamie K. Inagawa, Solicitor-General, Alisha B. Thompson, Assistant Solicitor-General*, for appellee.