BARNES, Presiding Judge,
dissenting.
Because the trial court should be affirmed on the alternative ground raised below that Domenge-Delhoyo was not timely advised of her implied consent rights, I respectfully dissent.[10]
“OCGA § 40-5-55 (a)[ ] provides that any person who operates a motor vehicle in this state and is arrested for DUI is deemed to have given consent to chemical tests of his bodily substances to determine the presence of alcohol or drugs.” Lee v. State, 324 Ga. App. 28, 29 (1) (749 SE2d 32) (2013). The purpose of providing the implied consent notice in accordance with OCGA § 40-6-392 (a) (4) is to notify drivers of their rights so that upon arrest, they can make informed decisions. Garrett v. Dept. of Public Safety, 237 Ga. 413, 415 (2) (228 SE2d 812) (1976).
OCGA § 40-6-392 (a) (4) provides, in pertinent part: “The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section.” (Emphasis supplied.) Our Supreme Court has held that
the mandatory language [in OCGA § 40-6-392 (a) (4) that] “[t]he arresting officer at the time of the arrest shall advise the person arrested of his rights” . . . cannot be interpreted to mean sometime in the future. One cannot make an intelligent choice to submit to a chemical test without the knowledge of the right to have an independent test made in order to contest the validity of the state’s test.
(Emphasis omitted.) Garrett, 237 Ga. at 415 (2). Therefore, OCGA § 40-6-392 (a) (4) is construed “narrowly, to mean almost literally what it said,” specifically that the officer is required to inform a defendant at the time of arrest of his rights to an independent chemical analysis *452 to determine the amount of alcohol or drugs present in his blood. Vandiver v. State, 207 Ga. App. 836, 837 (1) (429 SE2d 318) (1993); OCGA § 40-6-392 (a) (4). And “where implied consent rights are not read at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial[.]” (Citation and punctuation omitted.) Hough v. State, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005). “[T]he state has the burden of demonstrating compliance with the implied consent notice requirements.” (Citations omitted.) Miller v. State, 238 Ga. App. 61, 62 (1) (516 SE2d 838) (1999).
Here, the record reflects that at approximately two minutes into the encounter, Domenge-Delhoyo refused to perform the requested field sobriety tests, after which the officer told her that she was under arrest for DUI and asked her to put her hands behind her back. Domenge-Delhoyo then agreed to perform the field sobriety tests, and the officer stopped handcuffing her, but informed Domenge-Delhoyo that she was “already . . . under arrest” and advised her of her Miranda rights. The officer then performed several field sobriety tests, and approximately 15 minutes later, asked her if she would perform a preliminary breath test. Domenge-Delhoyo refused, but when she subsequently agreed as she was being placed in handcuffs, the officer again said that it was too late because she was under arrest. Finally, Domenge-Delhoyo was handcuffed, placed in the patrol car, and read her implied consent rights. She then consented to having her blood drawn.
Absent exigent circumstances, Georgia courts have found that “our law demands that the rights be read at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.” (Citation and punctuation omitted.) State v. Austell, 285 Ga. App. 18, 20 (2) (645 SE2d 550) (2007). “[Substantial compliance is not sufficient...; the officer must give the warning when he arrests the defendant unless there is a good reason not to.” (Emphasis omitted in part.) Dawson v. State, 227 Ga. App. 38, 40 (2) (488 SE2d 114) (1997).
In this case, there were no exigent circumstances that would excuse the delay of approximately 20 minutes between Domenge-Delhoyo’s arrest for DUI and the reading of her implied consent rights. I agree with the majority that it is entirely feasible that an officer may delay the reading of implied consent for a brief period to attend to the exigencies of police work. And, the majority has provided an extensive list of cases demonstrating exactly that proposition. This case, however, is not such an instance.
*453 Based on probable cause that Domenge-Delhoyo was intoxicated, the officer arrested Domenge-Delhoyo at approximately three minutes into their encounter. Although informing her that she was already under arrest and Mirandizing her, the officer then proceeded to conduct an almost 20-minute, essentially immaterial DUI investigation, before finally putting Domenge-Delhoyo into his vehicle and reading her the implied consent notice. There was no need for the officer to conduct field sobriety tests because Domenge-Delhoyo was already under arrest for DUI. The officer made clear to her that she was under arrest and that her cooperation in performing the tests was too late.
As the record reflects, the officer used the period between the arrest and the reading of the implied consent notice not to address an exigency or engage in any necessary “police work,” but simply to continue a DUI investigation for which Domenge-Delhoyo had already been arrested. See State v. Lamb, 217 Ga. App. 290, 291-292 (456 SE2d 769) (1995) (the officer “preferred” to read the implied consent warning in the presence of a witness, resulting in the defendant’s transport to the police station and an unlawful 30-minute delay); Clapsaddle v. State, 208 Ga. App. 840, 841-842 (1) (432 SE2d 262) (1993) (the accused was not given his implied consent rights until after he was transported to the jail, for no apparent reason). The standard police work in this case was not an exigency necessitating the delay in the timely reading of the implied consent notice and thus was not given “as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.” Vandiver, 207 Ga. App. at 837 (1) (standard practice of waiting to give the warning until the defendant was at the jail did not justify delay).
Given these circumstances, it is apparent that the officer did not “advise [Domenge-Delhoyo] of [her] implied consent rights in as accurate, timely, and practical a manner as dictated by the circumstances.” Martin v. State, 211 Ga. App. 561, 562 (440 SE2d 24) (1993). Accordingly, although on alternative grounds, I would affirm the trial court’s order granting Domenge-Delhoyo’s motion to suppress. See Mathis v. State, 279 Ga. 100, 102 (3) (a) (610 SE2d 62) (2005) (explaining that “[appellate courts] will affirm a trial court’s ruling if it is right for any reason”); Vandiver, 207 Ga. App. at 838 (1) (test results are inadmissible against defendant because of the invalid procedure).
I am authorized to state that Judge McFadden joins in this dissent.
*454 Decided July 15, 2016
Reconsideration denied July 29, 2016
On Motion for Reconsideration.
In her motion for reconsideration, Domenge-Delhoyo points this court to the United States Supreme Court’s recent opinion in Birchfield v. North Dakota, _ U. S. _ (136 SCt 2160, 195 LE2d 560) (2016), notes that this court did not mention it, and asserts that it “may have a significant impact on the analysis of the voluntariness of the Appellee’s consent to the state-administered blood test.” We disagree. This court did not include a discussion of the Birchfield opinion because it has no application to the facts before us.
The United States Supreme Court’s holding in Birchfield is limited to those states in which criminal penalties are imposed based upon a refusal to submit to a blood test. Birchfield, 195 LE2d at 589 (VI). Indeed, it expressly noted:
Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. See, e.g., [Missouri v.] McNeely, [_ U. S. _ (133 SCt 1552, 185 LE2d 696) (2013)] (plurality opinion); [South Dakota v.] Neville, [459 U. S. 553, 560 (103 SCt 916, 74 LE2d 748 (1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
Id. at 588-589 (VI). And while it remanded one of the cases before it to the state court “to reevaluate [the defendant’s consent given the partial inaccuracy of the officer’s advisory,” the notice given in that case stated that a test refusal was itself a crime. Id. at 573-574 (II) (C) and 590 (VII).
Here, the notice given to Domenge-Delhoyo did not state that it was a crime for her to refuse to allow a blood test, and she points to no law in Georgia imposing criminal penalties for refusing a blood test. Our criminal statute governing misdemeanor obstruction of a law enforcement officer, see OCGA § 16-10-24, does not bring this case within the ambit of Birchfield, particularly when our implied consent law does not require police officers to inform those arrested for DUI that they could be arrested for obstruction if they refuse a blood test.

Motion for reconsideration denied.

*455 Rosanna M. Szabo, Solicitor-General, Ryan A. Fisher, Assistant Solicitor-General, for appellant.
The Sessions Law Firm, D. Benjamin Sessions, for appellee.

 Although the majority contends that this ground is not properly before the Court, Domenge-Delhoyo filed a motion in limine to exclude the blood test on statutory grounds, including that she was not properly and timely advised of her implied consent rights.