## A92A1634. WELLS v. THE STATE.
(426 SE2d 231)

ANDREWS, Judge.

Defendant appeals his convictions of rape, incest, and false imprisonment.

Viewed in favor of the verdict, the evidence was that, around 7:00 a.m., on March 26, 1991, K. B., defendant's 16-year-old niece, arrived at her grandfather's home where she generally took a nap before returning to her home after working the night shift at a restaurant. Defendant was residing with the grandfather at the time. Because of the death of K. B.'s great-grandmother, two other uncles, her stepfather and mother, and a girl friend of one of the uncles had come to comfort her grandfather and go to Athens for the funeral later that day. Various family members were in and out of the house until about 5:30 p.m. when all but the victim, defendant, and one uncle remained. That uncle then left, leaving the victim and defendant alone in the house.

The victim was watching television and fell asleep on the couch in the living room around 7:00 p.m. Earlier in the day, she had cleaned up the house, including making up the bed in the room where defendant slept. She was awakened after dark by defendant dragging her by her arm towards his bedroom while stating that "I'm going to

f--- you and you're going to like it." He tried to pick her up as she struggled. Then, the victim felt the point of a knife at her throat and saw a glint of silver.

Defendant cut her belt with his knife and tore the button off her pants, forcing her onto the bed. He struck her in the face at least twice and she lost consciousness. When she came to after the first time, he was penetrating her, saying if he went to jail, she was going to have his baby.

The next morning, she awoke to find defendant dressed, awake, and lying beside her. He told her she was not going anywhere. She told him she would tell people she had been jumped by somebody else. He attempted to get her to put ice on her black eye. He did let her call her boss who came and picked her up. She was taken to the restaurant where the rescue team and police were called.

Hair samples were taken from defendant and a rape kit, including a pubic combing, was prepared by emergency room personnel. The microanalyst concluded that one of defendant's pubic hairs and one of the hairs obtained from the pubic combing of K. B. could have had a common origin.[1] The nurse who attended K. B. noticed numerous abrasions and contusions, including a badly bruised and swollen eye and neck abrasions.

Defendant testified that, after all the others left, he borrowed $20 from K. B., went to a local store and returned with a 12-pack of beer and a bottle of wine. He later left the house again, leaving K. B. there alone for a period of time. When he returned, he found her inebriated in the driveway and in attempting to get her inside, she fought him and he did hit her. He also slipped at the door to the house and fell, fully clothed, on top of K. B.

A search warrant for the house was obtained and the clothing worn by K. B., including the cut belt pieces, was found in defendant's bedroom, either hidden under an air mattress on the floor or up under the bed. The house was tidy, except for defendant's bedroom, which was in shambles, with the bed covers strewn about, soiled and stained. A plastic ziplock bag containing water and a hand towel was found on the floor in the living room. No containers of alcoholic beverages, either empty or full, were found.

1. Defendant's first two enumerations deal with the denial of his motion to suppress and will be considered together.

The motion to suppress filed below was based on the allegedly illegal arrest of defendant without a warrant or probable cause by a Clayton County officer while in Spalding County, without authority.[2]

---

[1] This opinion is the strongest given by a microanalyst when examining hair samples.

[2] While the motion contained other grounds, these were abandoned at the hearing when defendant, through counsel, stipulated that he had been properly given his *Miranda* warn-

To the extent that the first and second enumerations attempt to raise arguments here that were not made below, they will not be considered. *Miller v. State*, 201 Ga. App. 374, 375 (2) (411 SE2d 112) (1991).

Initially, it is noted that the standard for review of evidence presented and ruled upon by a judge on a motion to suppress is not that of *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979), as contended by defendant. "On motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. [Cit.]" *State v. Swift*, 232 Ga. 535, 536 (1) (207 SE2d 459) (1974).

So viewed, the evidence at the hearing on the motion was that Deputy Hitchcock, a Clayton County Deputy Sheriff, was a friend of Dan Wells, defendant's brother. On March 27, 1991, having just gotten off duty but while still in uniform, Deputy Hitchcock accompanied Dan Wells to Griffin at Dan's request. Deputy Hitchcock did not know the purpose of the trip at the time they left for Griffin.

Upon arrival in Griffin, they went to the home of defendant's girl friend, where Dan spoke with defendant while Deputy Hitchcock waited near the truck. Hitchcock did not hear most of the exchange, but did hear defendant say he was not going to return to jail. Defendant then pushed Dan, after which Dan grabbed him and the two fell to the ground. At that point, Hitchcock placed defendant under arrest for the battery on Dan committed in his presence. Because defendant would not stop fighting, Hitchcock did put handcuffs on him. He then took defendant to a phone in a nearby restaurant where he called the Spalding County authorities who transported defendant to their jail. He also contacted Clayton County and was informed that the felony warrants for the rape and assault had been issued.

A law enforcement officer may make an arrest without a warrant for an offense committed in his presence. OCGA § 17-4-20. This is true even if the arrest is outside his jurisdiction. *State v. Gian-gregorio*, 181 Ga. App. 324, 325 (352 SE2d 193) (1986); see *Hope v. State*, 193 Ga. App. 202, 204 (1) (387 SE2d 414) (1989). Even treating Hitchcock as a private citizen, he was authorized to make a citizen's arrest for the simple battery committed in his presence. OCGA § 17-4-60.

2. The third enumeration alleges error in the trial court's "not allowing Dorothy Cooper or Virginia Wells to testify at trial as to the false accusations" of K. B. against another uncle.

___

ings; had waived his rights voluntarily; and had consented to the taking of blood and hair samples.

Prior to trial, the court held a hearing pursuant to the State's motion in limine under OCGA § 24-2-3, regarding the prior sexual history of the victim. During this hearing, the court also heard evidence of defendant's allegedly false accusations by K. B. of sexual assault by another uncle, which he contended were admissible under *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989). The court found that defendant had failed to carry his burden of showing a "reasonable probability of falsehood" as required by *Smith*.

During the trial, the court sounded for witnesses Cooper and Wells, but neither responded. Defendant acknowledged that he had not issued subpoenas for these witnesses. The court's witness, Ms. Reynolds, testified that Ms. Wells was upset by the events and had decided not to testify.

Pretermitting the fact that the showing required by *Smith* before such evidence is admissible was not made, the witnesses were not present when called upon at trial and there was no error as enumerated.

3. Pursuant to USCR 31.3, the State gave notice of its intention to introduce evidence relating to defendant's plea of guilty to a 1983 rape. The State showed that the victim was a babysitter. She was sitting for defendant's brother's children, age one and three years, at the apartment where defendant lived with his brother and sister-in-law and the two children. Although the victim was 20 years old chronologically, she was described as a "little bit slow."

Defendant was alone at the apartment with the children and babysitter when he struck her, brandished a knife, and dragged her into his bedroom where she was raped. Additionally, she suffered bruises and a knot on the back of her head. Although defendant initially denied having intercourse with her, he later said he had, but that it had been consensual. Defendant pled guilty to the rape charge.

Defendant contends the evidence was inadmissible because the time lapse was too great and there were insufficient similarities.

The similarities were sufficient. Defendant victimized two young women whom he knew by use of a knife and physical force. He dragged both into his bedroom in a relative's house where he was residing at a time when he was with them without other adults around. *Hill v. State*, 183 Ga. App. 404 (1) (359 SE2d 190) (1987). The time lapse did not itself render the evidence inadmissible. Id. at 406.

4. The objection voiced in the final enumeration was not presented below and will not be considered here for the first time. *Miller*, supra.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 30, 1992.

*Faye W. Hays*, for appellant.

*Robert E. Keller, District Attorney, Deborah N. Maron, Assistant District Attorney,* for appellee.