## A97A0393. EDGE v. THE STATE.

(487 SE2d 117)

JOHNSON, Judge.

Bradley Edge was charged in Count 1 of an accusation with driving under the influence of alcohol to the extent that it was less safe for him to drive. See OCGA § 40-6-391 (a) (1). In Count 2, he was charged with having a blood-alcohol concentration of .10 grams or more in violation of former OCGA § 40-6-391 (a) (4). A jury found him guilty on both counts. Edge appeals from the convictions entered on the verdict.

1. Edge contends the trial court erred in denying his motion in limine/motion to suppress the results of the intoximeter test when he was not advised of his implied consent rights contemporaneously with his arrest and when an officer other than the arresting officer read him the rights.

(a) *Timing of the advice.* An enforcement officer with the Georgia Department of Transportation ("DOT") stopped Edge on I-20 after observing him drive in the high occupancy vehicle ("HOV") lane without any passengers in his truck. See OCGA §§ 32-9-4 (a), (b); 40-6-54.

As the officer approached Edge's pickup truck, he noticed that Edge's eyes were bloodshot and he smelled of alcohol. When asked if he had been drinking, Edge responded that he had consumed two sixteen-ounce containers of beer. At the officer's request, Edge handed over his driver's license and proof of insurance and stepped out of the truck. The officer walked Edge over to a retaining wall and then went back to the patrol car where he called the Georgia State Patrol to advise them he would be out of his vehicle while he conducted field sobriety tests on a suspected drunk driver. Edge performed the horizontal gaze nystagmus ("HGN"), "walk and turn," and "one-leg stand" tests. Based on Edge's performance on these tests, the officer concluded that Edge was impaired. However, the DOT officer testified that he wanted to confirm his determination that Edge was driving while under the influence of alcohol; he had been on the job for a month and this was the first time he had investigated a driver for driving under the influence. The officer called the State Patrol again, this time requesting that a state trooper be sent to the scene to conduct an alco-sensor test. About an hour and a half later, a state trooper arrived and administered the breath test. The state trooper then read Edge his implied consent rights and transported him to the county jail, where he was given an intoximeter test. In all, Edge was detained for approximately two hours before being advised of his implied consent rights.

"In order for the result of a chemical test to be admissible at trial, the suspect must be advised of his implied consent rights at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." (Citation and punctuation omitted.) *Smith v. State*, 204 Ga. App. 576, 577 (2) (b) (420 SE2d 29) (1992); see *State v. Lamb*, 217 Ga. App. 290, 291 (456 SE2d 769) (1995). Only in limited situations is a delay warranted, such as where advising the accused at the moment of physical arrest would not enable him to make an intelligent choice concerning the state's request and his right to undergo an independent test or where the exigencies of police work prevent giving the advice. See *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983). For example, in *Clapsaddle v. State*, 208 Ga. App. 840, 842 (432 SE2d 262) (1993), we held that a one-hour delay was not warranted in the absence of exigent circumstances, any indication that the accused was too intoxicated or emotionally distraught to understand his implied consent rights, or any indication that the officer was unaware the detainee would be charged with violating OCGA § 40-6-391. Likewise, in *Vandiver v. State*, 207 Ga. App. 836, 837-838 (1) (429 SE2d 318) (1993), we held that where the accused was not informed of his implied consent rights until after he waited for a tow truck and was transported to a police station, simply because it was the department's practice to fol-

low this procedure, the delay was unwarranted and test results inadmissible. However, in *Martin v. State*, 211 Ga. App. 561, 562 (440 SE2d 24) (1993), a majority of this Court held that a ten-minute delay in reading implied consent rights because the officer did not have her new implied consent card was excusable. And, in *Fore v. State*, 180 Ga. App. 196 (348 SE2d 579) (1986), we held that the implied consent law was complied with where a detainee waited 20-25 minutes before being read his rights, based on the officer's need to pursue and arrest another driver coupled with the fact that the detainee probably would not have benefited in any way by being informed of his rights any earlier.

It is clear from these cases that, in deciding whether the delay in giving implied consent advice is excusable, we consider the particular set of facts and circumstances of each case. See *State v. Lubin*, 164 Ga. App. 689, 692 (297 SE2d 371) (1982). Here, the delay resulted from the newly hired DOT officer's desire to be certain that his preliminary determination that Edge was impaired was correct. The officer contacted the State Patrol for assistance as soon as he finished administering the field sobriety tests. There is no evidence in the record to suggest either that the officer knew in advance that the state trooper's arrival would be delayed or that the time lapse was caused by any intention to deprive Edge of his rights. In fact, it appears from the DOT officer's testimony that his intent was to avoid charging Edge with driving while under the influence without having a sufficient basis therefor. Moreover, there is no evidence that Edge would have benefited by being informed of his rights any earlier than he was. See *Fore*, supra.

(b) *Advice given by other than the arresting officer.* We do not agree with Edge that the implied consent statute was violated because the state trooper who read him his rights was not the arresting officer. See OCGA §§ 40-6-392; 40-5-55. Edge reads the statute much too narrowly. Although the DOT officer made the traffic stop, wrote up the arrest report and considered himself the arresting officer, the state trooper was present during and assisted in the arrest by administering the final, determinative field test, placing Edge in his patrol car, and transporting him to jail. "[Edge] does not suggest, nor can we imagine, any detriment he may have suffered as a result of the fact that it was [the state trooper], rather than [the DOT enforcement officer], who advised him of his rights." *State v. Buice*, 176 Ga. App. 843, 844 (338 SE2d 293) (1985). No error or harm has been shown.

We note that even if the implied consent statute was not complied with and the intoximeter result therefore inadmissible, the evidence was nonetheless sufficient to authorize a conviction of the charge that Edge drove while under the influence to the extent that

it was less safe for him to do so.

2. We find no merit in Edge's contention that the trial court erred in denying his motion to dismiss because an enforcement officer with the DOT lacks authority to enforce HOV lane violations. Edge argues the enforcement and arrest powers of DOT officers extend only to those geographic areas enumerated in OCGA § 32-6-29 (b) (1), which areas do not include HOV lanes.[1] However, OCGA § 32-6-29 (b) provides that DOT enforcement officers have those specific powers *in addition to any powers or duties created by any other law*. OCGA § 32-6-29 (c) states that DOT enforcement officers have the full authority of peace officers[2] while in the performance of their duties. OCGA § 17-4-23 (a) provides, without geographical limitation, that a law enforcement officer is authorized to arrest a person accused of violating any law or ordinance governing the operation of a vehicle by issuing a citation where the offense is committed in his presence. See OCGA § 17-4-23 (a); *Glazner v. State*, 170 Ga. App. 810, 811 (318 SE2d 233) (1984). McDuffie's authority to arrest Edge was, therefore, contained in "other law," namely OCGA § 17-4-23. We also point out that even a private person can make an arrest for an offense committed in his presence. See *Wells v. State*, 206 Ga. App. 513 (426 SE2d 231) (1992); OCGA § 17-4-60.

Edge relies upon a 1978 opinion of the attorney general which opines that the arrest powers of DOT enforcement officers do not extend beyond those specifically enumerated in what is now OCGA § 32-6-29. See 1978 Op. Atty. Gen. No. 78-73. We are not persuaded by the conclusion reached in that opinion which, in our view, fails to give proper emphasis to the statutory provision that DOT enforcement officers have the full authority of peace officers and any powers created by any other law. See OCGA § 32-6-29 (b), (c). Moreover, in the opinion, which was written nearly 20 years ago, the attorney general did not address, and probably did not contemplate, the situation presented here. Interestingly, in May 1996, the Governor of the State of Georgia issued an executive order, referencing this same 1978 opinion of the attorney general, specifically conferring upon DOT enforcement officers the authority to enforce travel restrictions in HOV lanes, including the issuance of citations for such violations.

3. Edge claims the trial court erred in denying his motion for mistrial after McDuffie testified that the HGN test results indicated

---

[1] Areas specifically enumerated are: rest areas, truck-weighing stations or checkpoints, wayside parks, parking facilities, toll facilities and any buildings or grounds for public equipment and personnel used for or engaged in administration, construction or maintenance of the public roads or research pertaining thereto. OCGA § 32-6-29 (b) (1).

[2] Peace officers are defined in the statute as persons who by virtue of their office are vested by law with a duty to maintain public order or to make arrests for offenses, whether the duty extends to all crimes or specific offenses.

a blood-alcohol concentration of over .10 percent when, according to Edge, HGN testing has not evolved to the point it can be used to ascertain specific blood-alcohol content. Assuming there was error, Edge failed to preserve the issue because, after the court gave curative instructions, Edge did not request further curative instructions or renew his motion for mistrial. See *D'Angelo v. State*, 223 Ga. App. 558, 560 (2) (479 SE2d 384) (1996).

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED MAY 28, 1997.
▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Before Judge Smith.
*Bruce F. Morriss, Daniel Shim*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Charles C. Flinn, W. Cliff Howard, Assistant Solicitors*, for appellee.