## A99A0983. THE STATE v. MARKS.
(521 SE2d 257)

ELDRIDGE, Judge.

The State appeals from a Cobb County State Court order granting Susan Marks' motion to suppress Marks' refusal to take a State-administered breath test.

At approximately 2:30 a.m., appellee Susan Marks, Eric Billings, and five unnamed women were involved in a three-car accident on Barrett Parkway on the I-75 entrance ramp. Marks and Billings had just left Cowboys, a nearby bar. Marks rear-ended Billings' vehicle, which had rear-ended the vehicle occupied by the unnamed females. All three vehicles stopped in the road, and all passengers and drivers were milling around the vehicles when Officer B. Perez arrived on the scene.

Upon arrival, Perez "observed that two drivers were heavily intoxicated, and that's when I made contact with Susan Marks." The officer spoke to Marks and "observed a heavy odor of alcoholic beverage on her, and I asked her if she had been drinking that night. She said she had just left Cowboys and had four or five drinks that night."

Officer Perez administered field sobriety tests to Marks. Marks "performed the finger to nose, which she failed both times, the heel to toe walk, which she failed, and the alphabet, which she did pretty fine, and the one-leg stand." The entire process was captured on videotape. During one part of the testing, Marks questioned the officer, asking "Why am I doing all these when they [the unnamed women] cut us [Marks and Billings] off?" On the videotape, Marks accused the officer of blaming her for the accident and thus making her perform the tests. Perez told Marks that the other drivers would be questioned too, and the officer "then gave her [Marks] a registered — gave her an alcosensor which she registered positive on. I gave her that before and after field tests. She registered positive both times." Marks was arrested at 2:50 a.m. and placed in the back of Perez's patrol car.

During the entire course of the field testing and questioning of Susan Marks, Eric Billings was continuously, as the trial judge put it, "kibitzing the situation, that is, he was making comments and throwing out things as [the officer was] trying to handle [the] investigation." Officer Perez testified that "I kept having to look over there, and Officer Littler kept having to tell him to get back also."

After placing Marks in the back of the patrol car, Officer Perez turned her attention to Eric Billings. Billings admitted to having "four or five drinks at Cowboys," as well as several beers at an earlier Braves game. Perez administered the same field sobriety tests to Billings. He failed them and was placed under arrest. Immediately following arrest, Perez read Billings the implied consent notice for those age 21 and over. OCGA § 40-5-67.1 (b) (2). When asked whether he consented to testing or not, Billings refused testing, complaining that the implied consent notice failed to contain the information that a hearing is held before one's driver's license is suspended for refusing to take a State-administered chemical test.

The videotape shows that at approximately 3:06 a.m., Officer Perez placed Billings in the back of her patrol car along with Marks. Immediately thereafter, in the amount of time it took Perez to walk around the car to Marks' side, Perez then read the implied consent notice to Marks. The audio portion of the videotape records no conversation between Marks and Billings while Perez was walking around the patrol car. Further, Perez did not hear any conversation. Also, Billings did not speak while Perez read the implied consent to Marks.

Perez began reading Marks the implied consent notice approximately 16 minutes after her arrest. Immediately after Perez began reading, Susan Marks stated "I don't agree to anything you're saying because I don't want to talk to you anymore." Officer Perez kept reading. Marks stated, "That's fine. I'm gonna sue you." Officer Perez kept

reading. At the conclusion of the notice, Perez asked Marks to respond "yes or no," as to consent to testing. Marks refused to answer. It is only at this point in the audio portion of the tape that Billings' voice is heard urging Marks to "say no, say no." However, Marks did not take Billings' advice and refused to answer at all. Perez asked Marks if she was going to respond, and Marks replied "Nope." Susan Marks, again, complained that "you didn't give one thing to those girls who caused the wreck."

Marks and Billings were transported to the precinct. There, Perez took Marks aside. "I reread Implied Consent to her, placed her in front of the machine and she refused to perform the test."

Prior to trial, Marks filed a motion to suppress her refusal. She contended that the approximately 16-minute delay between her arrest and the reading of the implied consent warnings rendered Marks' subsequent refusal to take the test inadmissible. The trial court did not agree with this contention. The trial court did not find that the 16-minute delay between arrest and notification was excessive or unwarranted by the circumstances. Nor did the trial court find that the *delay* impaired the accused's ability "to make an intelligent choice concerning the state's request and [her] right to undergo an independent test." *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983).

Instead, the trial court granted Marks' motion to suppress because the trial court found that Officer Perez's act of placing Billings into the back seat of the patrol car interfered with Marks' decision as to implied consent testing:

> [Trial Court:] Suppose I tell you that I am less concerned about the passage of 17 or 18 minutes of time and I am more concerned about the fact that they placed him [Billings] in the back seat of the patrol car with her, after this lengthy delay, an individual who had clearly been interfering with her, with the police officer trying to deal with her on her field sobriety, and that individual had just refused, very forcefully, just refused Implied Consent, and they placed him into the car with her in the back seat and then read her Implied Consent, and *he is allowed to interfere with her answer in that by telling her say no, say no.* . . . That's what I'm concerned about right there. That was a situation created by the police, not by the Defendant. . . . *Bad advice* was given by a person who was under arrest and under the control of the police, and they have a right to keep him away from her if they wanted to. That's what worries me.

(Emphasis supplied.)

Thereafter, the trial court granted Marks' motion to suppress, finding:

I think that this was a situation that was created by the arresting officer that could have been easily avoided. There were more than one police car in the area. These two suspects could have been kept apart from each other. And perhaps if that had been done there would have been a better opportunity for Ms. Marks to remain calm and to have a better understanding of her Implied Consent and make a more reason to answer to the Implied Consent. Therefore, I am going to suppress her refusal to submit to the state-administered chemical test and not allow her refusal to be used in evidence against her.

*Held*:

1. We conclude that the above-referenced ruling was error based upon both (a) the law and (b) the facts of this case.

(a) The law does not require an officer to ensure that a DUI suspect be provided an environment free from a *non-State* actor's "bad advice" when deciding whether to cooperate with a properly administered implied consent notice, especially when that advice does not inure to the State's benefit and especially when the DUI suspect is equally free to ignore such advice. In *Allenbrand v. State*,[1] we specifically rejected the "bad advice" basis for suppressing a refusal to submit to chemical testing; we found that a DUI suspect who acts on non-State-initiated advice demonstrates the exercise of free "choice," regardless of whether such choice is later deemed to be based upon "good advice" or "bad advice." Id. at 611.

In this case, there is no evidence that the implied consent warnings given before the test gave Marks "inaccurate, misleading, and/or inapplicable information," thus depriving her of making an informed choice regarding submitting to or refusing the State-administered test. *Morrissette v. State*, 229 Ga. App. 420, 423 (2) (a) (494 SE2d 8) (1997). Moreover, "[a]ppellant presented no evidence and absolutely nothing is raised by the evidence to suggest that appellant did not in fact understand, or was incapable of understanding, the law and [her] rights as read to [her] by the officer[ ]." *Mitchell v. State*, 174 Ga. App. 594, 596 (1) (330 SE2d 798) (1985). See also *State v. Leviner*, 213 Ga. App. 99 (443 SE2d 688) (1994). Accordingly, we do not find that Officer Perez's act of placing a contentious Billings in the back-

---

[1] 217 Ga. App. 609, 610-611 (2) (458 SE2d 382) (1995) (rejecting defendant's contention that he was deprived of an opportunity to make an informed choice regarding implied consent because " 'attorneys in the past had advised him never to take the breath test' ").

seat of her patrol car with Marks provides a sufficient basis for suppression of Marks' subsequent refusal to submit to chemical testing, absent any allegation and evidence of defect in the implied consent notice and absent any allegation and evidence that Marks did not understand her rights under such notice. The trial court's granting of Marks' motion to suppress on this basis was error as a matter of law.

(b) "In reviewing a trial court's decision on a motion to suppress, an appellate court must adopt the trial court's findings of fact unless they are clearly erroneous and not supported by any evidence admitted at the suppression hearing. [Cits.]" *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998). Here, there is no evidence in the record to support the trial court's conclusion that the officer's act of placing Billings in the back of the patrol car with Marks "interfered with" Marks' decision as to implied consent.

(i) Marks did not testify at the suppression hearing, and she never stated that Billings interfered with or influenced in any way her decision as to implied consent. Accordingly, that such interference/influence occurred was not established so as to provide a factual basis for the trial court's decision. "A fact is not proved unless it is established." (Citation and punctuation omitted.) *Jackson v. State*, 177 Ga. 264, 265 (170 SE 26) (1933); *Mooney v. State*, 221 Ga. App. 420, 424 (471 SE2d 904) (1996).

(ii) Further, a review of the videotape and the testimony at the hearing on the motion to suppress shows that, before Billings said one word to Marks in the back of the patrol car, Marks had already determined that "I don't agree to anything you're [Officer Perez] saying because I don't want to talk to you anymore." Marks' decision not to cooperate with chemical testing was apparent before Officer Perez could even begin the notification process properly and before Billings offered any alleged interference. From the video, it is clear that Marks' refusal to cooperate was driven not by any interference by Billings, but by Marks' anger that the police "didn't give one thing to the girls who caused the wreck," anger that Marks had expressed earlier during field testing — well before Billings was placed in the back of the patrol car.

(iii) Finally, according to the trial court, Billings' alleged interference was to advise Marks to "say no, say no" to chemical testing. However, while in the back of the patrol car, Marks did not listen to Billings. Instead, she refused to answer Officer Perez at all with regard to chemical testing. Later at the precinct, after Marks and Billings had been separated, Marks was again read the implied consent notice, and she was placed in front of the breath test machine. It was at that time, free from Billings' alleged interference and "kibitzing the situation," that Marks refused chemical testing.

Accordingly, based upon the facts of record, we find as clearly

erroneous the trial court's factual determination that the officer's act of placing Billings in the back of the patrol car with Marks interfered with her decision as to implied consent. The trial court's granting of Marks' motion to suppress on this basis was error as a matter of fact.

2. We agree with the trial court's initial conclusion that, under the facts of this case, the approximately 16-minute delay between Marks' arrest and the reading of the implied consent notice did not require suppression of Marks' refusal to submit to chemical testing.

"[T]his Court has held that notification is timely if given at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." (Citation and punctuation omitted.) *Hollis v. State*, 234 Ga. App. 269, 271 (505 SE2d 837) (1998). A delay may be warranted where "the exigencies of police work prevent giving the advice." *Edge v. State*, 226 Ga. App. 559, 560 (487 SE2d 117) (1997).

Here, at 2:30 a.m., on Barrett Parkway next to the I-75 entrance ramp, Officer Perez was dealing with a three-car collision. The vehicles were still in the roadway, and seven people were involved. Initially, there were three officers on the scene,[2] one of whom handled the unnamed women and arranged to have the vehicles moved and impounded, and one of whom was a training supervisor who tended to the disruptive Eric Billings, aided in the handling of traffic and vehicles, and observed Perez as lead investigative officer. "[I]n deciding whether the delay in giving implied consent advice is excusable, we consider the particular set of facts and circumstances of each case. [Cit.]" *Edge v. State*, supra at 561 (1) (a). Under the facts and circumstances of this case, we agree with the trial court that it was not unreasonable for Perez, in dealing with Marks and Billings, both of whom appeared to the officer to be heavily intoxicated, to determine that attending to Eric Billings was necessary prior to reading Marks the implied consent notice.

In a situation where an officer properly delays the reading of implied consent for a brief period in order to attend to the exigencies of police work, it would appear incumbent upon a defendant to demonstrate how she would have benefited by being read the implied consent notice earlier. *Fore v. State*, 180 Ga. App. 196 (348 SE2d 579) (1986); *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985); see also *Vandiver v. State*, 207 Ga. App. 836, 838 (429 SE2d 318) (1993) (Birdsong, P. J., dissenting). Marks has made no such showing.

[D]ue to the more immediate concerns of the arresting

---

[2] Apparently, one more officer arrived on the scene after Marks had been placed in the back of the patrol car and Perez was interviewing Billings.

officer in the present case with completing [her] investigation of the accident scene and dealing with the hazard created by the [second intoxicated, contentious suspect], and given the fact that it would have been of no conceivable benefit to the defendant to have been informed of [her] implied consent rights any earlier, we hold that the advice was given as soon after the moment of the arrest as was reasonably practical.

(Citation and punctuation omitted.) *Fore v. State*, supra at 196.

"Accordingly, because the warning was given in close proximity to the arrest and its timing was warranted by the circumstances, the evidence of defendant's refusal to submit to testing was admissible and should not have been suppressed." (Citation and punctuation omitted.) *State v. Holmes*, 224 Ga. App. 29, 30 (479 SE2d 409) (1996).

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED JULY 29, 1999 ▮▮▮▮▮▮▮▮

*Barry E. Morgan, Solicitor, Jessica K. Moss, Katherine L. Kissam, Assistant Solicitors*, for appellant.

*John S. Morgan*, for appellee.