## A00A2237. CARTHON v. THE STATE.
(548 SE2d 649)

PHIPPS, Judge.

Ijean Carthon was convicted of second degree vehicular homicide, driving under the influence of alcohol to the extent she was a less safe driver, driving under the influence of drugs, and failure to yield the right of way.[1] She asserts the following errors: (1) the trial court erred in sentencing her for both second degree vehicular homicide and failure to yield; (2) the trial court erred in denying her motion to suppress the results of the State-administered blood tests; (3) the trial court erred in sentencing her for both driving under the influence of alcohol and driving under the influence of drugs; (4) her conviction for driving under the influence of drugs is invalid because it is based upon a statute which has been declared unconstitutional; and (5) there was insufficient evidence to support her conviction for driving under the influence of alcohol.

Of Carthon's five claims of error, we find merit in two. The trial

---

[16] (Punctuation omitted.) *Wilson v. Commercial Cold Storage*, 179 Ga. App. 260, 261 (346 SE2d 6) (1986).

[1] Carthon was also indicted for driving with an unlawful alcohol concentration and operating a vehicle without proof of insurance. Before trial, the court granted Carthon's motion to quash the unlawful alcohol concentration charge. And after the close of the State's case, the court directed a verdict for Carthon on the charge of no proof of insurance.

court erred in denying Carthon's motion to suppress because the implied consent warning was not timely read to her. And the trial court erred in sentencing her for both second degree vehicular homicide and failure to yield because the two offenses merged. We reverse Carthon's convictions for driving under the influence of alcohol to the extent that she was a less safe driver and driving under the influence of drugs. We also reverse her conviction for failure to yield and vacate her sentence for that offense. We affirm the conviction and sentence for second degree vehicular homicide.

Viewed in the light most favorable to the verdict and judgment,[2] the evidence shows that the following occurred. As a light rain fell, Daniel Sessions drove east on Highway 74 in Thomaston between 8:00 and 8:30 p.m. on October 4, 1995. At the same time, Carthon drove south on a street that intersected with Highway 74. At the intersection, a caution light faced Sessions and a stop sign faced Carthon. According to Sessions, Carthon's car began to slow as it approached the stop sign; he believed Carthon was stopping; but instead, she continued into the intersection, looking straight ahead. Sessions's car collided with the passenger side of Carthon's car.

Carthon's car was forced into a ditch, and Sessions's car came to rest "two wheels on the pavement, two wheels on the dirt." Carthon's front seat passenger, Barbara Watson, was seriously injured and trapped between the driver's and passenger's seats.

Sessions testified that after the collision Carthon was "talking crazy," had slurred speech, and smelled strongly of alcohol. He believed she had been drinking.

Officer John Edwards and his partner Officer Phil Hammond went to the scene. Edwards took charge of investigating the scene for injuries and spoke to Sessions and Carthon. Another officer arrived later and assisted with traffic control.

When Edwards spoke to Carthon, he smelled alcohol. He asked her if she had been drinking, and she said that she had consumed one quart of beer. Edwards testified that he placed Carthon in the back of his patrol car because it was raining heavily, other cars were traveling close by, and he believed she was intoxicated. At some point, Carthon asked Edwards "if she was going to go to jail," and Edwards told her, "No."

After placing Carthon in his patrol car, Edwards returned to Carthon's car to help emergency medical technicians remove Watson. Hammond sat in the patrol car with Carthon and recorded driver's license and insurance information on Carthon and Sessions.

About 20 to 30 minutes after Edwards and Hammond arrived on

---

[2] See *Self v. State*, 245 Ga. App. 270, 271-273 (1), (2) (537 SE2d 723) (2000).

the scene, Watson was extricated and a wrecker arrived to remove the wrecked vehicles. Edwards turned over the vehicles to the wrecker drivers and transported Carthon to the hospital for testing. At the hospital laboratory, 45 minutes to an hour after his arrival at the accident scene, Edwards read an implied consent warning to Carthon. Carthon initially refused but consented after Edwards reiterated that her driver's license would be suspended for a year if she did not consent. After Carthon provided a blood sample, Edwards issued her citations for failure to yield, no insurance,[3] driving under the influence of alcohol, and driving under the influence of drugs.[4] Then, he released her.

Five days later, Watson died from injuries sustained in the collision. The results of Carthon's blood tests showed that she had an alcohol concentration of 0.12 grams and a trace of cocaine metabolite in her blood.

1. Partly on the ground that implied consent warnings were not read to her in a timely fashion, Carthon moved to suppress the results of the State-administered blood tests. The trial court denied the motion, finding that the time frame within which Edwards advised Carthon of her implied consent rights was reasonable under the circumstances. Carthon has appealed that ruling.

Georgia law authorizes a police officer to seek chemical testing of a person's blood, breath, or urine when the officer reasonably suspects the person of driving under the influence of alcohol or drugs[5] or when the person has been involved in a traffic accident resulting in serious injuries or fatalities.[6] For the State-administered chemical tests to be admissible, implied consent warnings must be given in a timely manner.[7] On a motion to suppress, the State bears the burden of showing that implied consent warning requirements have been met.[8]

OCGA § 40-6-392 (a) (4) provides that when the State administers a chemical test to a person based on suspicion of DUI, implied consent warnings must be read to the person at the time of arrest for DUI. The Supreme Court of Georgia has interpreted that provision narrowly,[9] to mean at "the time of arrest or a time as close in proximity to the instant of arrest as the circumstances of the individual case

---

[3] Carthon was cited for no insurance but indicted for no proof of insurance.

[4] The record contains no evidence regarding Edwards's basis for citing Carthon with driving under the influence of drugs.

[5] See OCGA §§ 40-5-55 (a); 40-5-67.1; 40-6-392.

[6] See OCGA § 40-5-55 (a).

[7] See generally *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983).

[8] *Miller v. State*, 238 Ga. App. 61 (1) (516 SE2d 838) (1999).

[9] See *Vandiver v. State*, 207 Ga. App. 836, 837 (1) (429 SE2d 318) (1993).

might warrant."[10] A majority of the court rejected a dissenting opinion that "time of arrest" means "at the time of original custody[ ] and prior to the time the defendant-motorist must decide whether to undergo or refuse the state-administered test. . . ."[11]

When a motorist is not arrested for DUI but is tested solely based upon involvement in an accident involving serious injuries or fatalities, implied consent warnings must be given within a reasonable time after the accident, as determined by the circumstances.[12] Under ordinary circumstances, that may be "at the time [a chemical] test is requested, which may or may not be at the time of actual testing."[13]

The test for determining whether a person is under arrest at a traffic stop is whether a "reasonable person in the suspect's position would have thought [his] detention would not be temporary."[14] Traffic stops are analogous to investigative stops under *Terry v. Ohio*;[15] the power of the police to detain does not last beyond the period necessary for investigation.[16] When the suspect's freedom of movement continues to be curtailed after the general on-the-scene investigation has concluded, the suspect is under arrest.[17]

Edwards placed Carthon in the locked backseat of his patrol car because he suspected that she was guilty of DUI. Sessions, who was not suspected of DUI, was allowed to remain free at the accident scene.

After Edwards concluded his on-the-scene investigation, he returned to his patrol car and drove Carthon away to the hospital for blood tests which he expected to provide definitive evidence of her level of intoxication. The record does not indicate that he procured Carthon's consent before leaving the scene for the hospital or that he even explained to her where he was taking her or why.[18] On the other hand, Edwards simply told Sessions that he should go to the hospital for a blood test and allowed him to ride with his mother.

---

[10] (Punctuation omitted.) *Perano*, supra, 250 Ga. at 708.

[11] See id. at 709 (Hill, C. J., dissenting).

[12] *State v. Becker*, 240 Ga. App. 267, 270 (1) (523 SE2d 98) (1999); *Seith v. State*, 225 Ga. App. 684, 686-687 (484 SE2d 690) (1997).

[13] (Emphasis omitted.) *Joiner v. State*, 239 Ga. App. 843, 848 (2) (522 SE2d 25) (1999).

[14] (Citations, punctuation and emphasis omitted.) *Lyons v. State*, 244 Ga. App. 658, 663 (2) (535 SE2d 841) (2000); *Seith*, supra, 225 Ga. App. at 685.

[15] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[16] *Berkemer v. McCarty*, 468 U. S. 420, 439 (104 SC 3138, 82 LE2d 317) (1984) (traffic stops analogous to *Terry* stops); *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995) (limits of *Terry* stops).

[17] Cf. *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989); *Montero v. State*, 245 Ga. App. 181, 184 (537 SE2d 429) (2000).

[18] Compare *Seith*, supra, 225 Ga. App. at 685 (defendant who had been involved in serious accident agreed to go to hospital for blood test and agreed to wait in patrol car so that officer could be assured he did not ingest intoxicants before test).

After arriving at the hospital, based solely upon the same information he had acquired at the scene of the wreck, Edwards issued citations charging Carthon with driving under the influence of alcohol and driving under the influence of drugs. Under these circumstances, we must conclude that Edwards placed Carthon under arrest at the scene of the collision where she sat in the backseat of his patrol car while he investigated the collision.

Thus, it is clear that Carthon was not read implied consent warnings at the time she was arrested at the wreck scene but later after she was taken to the hospital. The question is whether she was read the implied consent warnings as soon in proximity to the instant of arrest as the circumstances might have warranted. That question turns on whether the delay in reading the implied consent warnings was excusable, given the facts and circumstances of the case.[19] *Morrissette v. State*[20] and *State v. Marks*[21] compel a finding that the "exigencies of police work"[22] had ceased when Edwards returned to his car after working the wreck scene to transport Carthon to the hospital. Thus, it was incumbent upon him to read the implied consent warnings to Carthon before he drove her away from the scene of the collision.[23] Because this was not done, *Perano v. State*[24] requires us to hold that the implied consent warnings were not timely read to Carthon and that the trial court erred in denying Carthon's motion to suppress. Because we do not know what weight the jury may have placed upon the blood test results, we reverse Carthon's convictions for driving under the influence of alcohol to the extent she was a less safe driver and driving under the influence of drugs.

2. In regard to her claim that the evidence was insufficient to support her conviction for driving under the influence of alcohol to the extent that she was a less safe driver, Carthon argues that Edwards's opinion testimony that she was intoxicated lacked an adequate foundation. She also argues that her blood alcohol test result should not be considered because the trial court erred in admitting it.

Even if Edwards's opinion testimony and the blood test results are not considered, the evidence was adequate to allow a rational trier of fact to conclude that Carthon drove while under the influence

---

[19] See *Edge v. State*, 226 Ga. App. 559, 561 (1) (a) (487 SE2d 117) (1997).

[20] 229 Ga. App. 420, 424 (2) (b) (494 SE2d 8) (1997).

[21] 239 Ga. App. 448, 453-454 (2) (521 SE2d 257) (1999).

[22] Id. at 453 (2) (quoting *Edge*, supra, 226 Ga. App. at 560).

[23] See id. at 453-454; *Morrissette*, supra, 229 Ga. App. at 424; see also *Vandiver*, supra, 207 Ga. App. at 837-838 (without exigencies, reading implied consent warnings at police station found untimely); *Clapsaddle v. State*, 208 Ga. App. 840, 841-842 (2) (432 SE2d 262) (1993) (same).

[24] Supra, 250 Ga. 704.

of alcohol to the extent it was less safe for her to drive.[25] Thus, although we determined in Division 1 of this opinion that Carthon's conviction for driving under the influence of alcohol to the extent that she was a less safe driver must be reversed, she may be retried for that offense because a rational jury may find the properly admitted evidence is sufficient for conviction.

3. Next, Carthon argues that her conviction for driving under the influence of drugs should be reversed because the relevant portion of the DUI statute, OCGA § 40-6-391 (a) (6), has been declared unconstitutional. Section 40-6-391 (a) (6) provides that

> A person shall not drive or be in actual physical control of any moving vehicle while[,] [s]ubject to the provisions of subsection (b) of this Code section, there is any amount of marijuana or a controlled substance . . . present in the person's blood or urine, or both, including the metabolites and derivatives of each or both without regard to whether or not any alcohol is present in the person's breath or blood.

Subsection (b) states in part that if a person is or has been legally entitled to use a given drug,[26] "such person shall not be in violation of this Code section unless such person is rendered incapable of driving safely as a result of using [the] drug. . . ."

Carthon relies upon *Love v. State*.[27] There, the Supreme Court of Georgia held that OCGA § 40-6-391 (a) (6) violated equal protection because there was no rational basis for the different treatment of persons based on whether the presence of marijuana metabolites in their blood derived from legal versus illegal use of marijuana. However, in the recent case of *Keenum v. State*,[28] we held that "[t]here is nothing in *Love* . . . which states that the statute is unconstitutional when applied to those convicted of driving with a detectable level of cocaine in their system." Thus, as in *Keenum*, we conclude that *Love* does not apply to this case.

4. The trial court sentenced Carthon to concurrent one-year sentences for driving under the influence of alcohol to the extent it was less safe and driving under the influence of drugs. Based upon

---

[25] See *Gilmore v. State*, 242 Ga. App. 470 (1) (530 SE2d 221) (2000) (strong odor of alcohol and involvement in accident were sufficient evidence); see also *Garrett v. State*, 230 Ga. App. 97 (2) (495 SE2d 579) (1998) (strong odor of alcohol, involvement in accident, admission of alcohol consumption, and talkativeness were sufficient evidence).

[26] The statute excludes alcohol from the meaning of drugs.

[27] 271 Ga. 398, 402-403 (3) (517 SE2d 53) (1999).

[28] 248 Ga. App. 474, 475 (1) (546 SE2d 288) (2001).

*Dotson v. State*[29] and *O'Dell v. State*,[30] Carthon contends that she could not be sentenced for both. *Dotson* and *O'Dell* stand for the proposition that the defendant may not be convicted of both driving under the influence of alcohol to the extent it is less safe and driving with an unlawful alcohol concentration where the two charges are predicated upon the same conduct.

Carthon's charges for driving under the influence of alcohol to the extent it was less safe and driving under the influence of drugs were not predicated upon precisely the same conduct. Thus, there was no error on this ground in convicting and sentencing her on both charges.

5. The trial court sentenced Carthon to serve one year in confinement for second degree vehicular homicide and twelve months on probation for failure to yield. Carthon was indicted for first degree vehicular homicide based upon the allegation that she caused Watson's death through commission of the crimes of driving under the influence of alcohol and driving under the influence of drugs. The jury acquitted Carthon of first degree vehicular homicide and convicted her of the lesser included offense — second degree vehicular homicide. That offense was predicated upon the allegation that Carthon caused Watson's death by failing to yield.

Under the circumstances, failure to yield was a lesser included offense of second degree vehicular homicide.[31] The two offenses merged, and Carthon could not be convicted of both.[32] Thus, we reverse Carthon's conviction for failure to yield and vacate her sentence for that offense.[33]

*Judgment affirmed in part, reversed in part and vacated in part. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 23, 2001.

*Virgil L. Brown & Associates, Larkin M. Lee*, for appellant.
*William T. McBroom III, District Attorney, Ronnie Poole, Assistant District Attorney*, for appellee.

---

[29] 213 Ga. App. 7, 10 (1) (443 SE2d 650) (1994).
[30] 200 Ga. App. 655, 657 (3) (409 SE2d 54) (1991).
[31] See *Duncan v. State*, 183 Ga. App. 368, 370 (5) (358 SE2d 910) (1987); *Rank v. State*, 179 Ga. App. 28, 30 (2) (345 SE2d 75) (1986).
[32] Id.
[33] Id.