### A05A2337. NAIK v. THE STATE.
#### (626 SE2d 608)

BERNES, Judge.

Mansi S. Naik appeals her convictions for driving under the influence of alcohol with an unlawful alcohol concentration of 0.08 grams or more, in violation of OCGA § 40-6-391 (a) (5), and driving under the influence of alcohol to the extent that it was less safe for her to drive, in violation of OCGA § 40-6-391 (a) (1). She asserts that the trial court erred in denying her motion to suppress the results of her State-administered breath test. For the reasons that follow, we affirm.

On the early morning of April 9, 2004, a DUI task force officer initially stopped Naik out of concern for her safety because she was driving with a flat tire. Upon approaching the vehicle, the officer detected a strong odor of alcoholic beverage coming from the car and noticed that Naik's eyes were glassy. The officer proceeded to conduct several field sobriety tests on Naik and concluded that she was under the influence of alcohol. He placed her under arrest in the back of his patrol car, where she got very upset and began crying. Naik spent the next 18 minutes in the patrol car before the officer read her the implied consent rights pursuant to OCGA § 40-6-392 (a) (4) and obtained her consent to perform a breath test. The test confirmed that Naik was under the influence of alcohol.

---

[5] See id.; *Massey v. State*, 268 Ga. 36, 37 (2) (485 SE2d 200) (1997).

Naik contends that the results of the State-administered breath test should have been excluded because she was not timely notified of her implied consent rights as required by OCGA § 40-6-392 (a) (4), but was instead held in the patrol car for 18 minutes before receiving such notification. That statute requires that the arresting officer advise the accused "at the time of arrest" of her right to an independent chemical analysis in order to test the validity of the State's test. OCGA § 40-6-392 (a) (4); *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983). However, the Supreme Court of Georgia has held that the notification required by OCGA § 40-6-392 (a) (4) is timely if given "at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." *Perano*, 250 Ga. at 708.

We review the trial court's application of the law to the undisputed facts presented at the motion to suppress hearing de novo. *Cain v. State*, 274 Ga. App. 533 (617 SE2d 567) (2005). The trial court's decision will not be disturbed if there is evidence to support it. Id.

The evidence presented at the hearing revealed that, immediately after placing Naik in the patrol car, the arresting officer realized that there was a passenger in Naik's vehicle, and explained that he felt it necessary to deal with the passenger immediately: "[Y]ou never know if the passenger might be armed. You never know what kind of situation the passenger is in. They might be upset. They might be angry. So my main concern, if there is a passenger, is to make sure that the passenger is aware; make sure it's a safe area for the officer before I do anything else." After placing Naik in the back of the patrol car, he therefore approached the passenger and explained to her that Naik was being arrested, and worked with the passenger to ensure that she had a way to get home safely.

The officer also felt it was important to get the vehicle off of the roadway as quickly as possible, because it was stopped in a turn lane. He called for and transferred possession of the vehicle to a wrecker. Prior to releasing the vehicle to the wrecker, he took an inventory of its contents and ensured that the passenger took any valuables, including Naik's purse, that had been left inside. Throughout this process, the officer was constantly monitoring the passenger, who was traveling freely between the vehicle and Naik, and fielding questions from both Naik, who was crying and very upset, and the passenger.

The officer explained at the hearing that he did not believe that he could effectively deliver Naik's implied consent rights until the passenger was attended to, possession of the vehicle was transferred, and the scene was controlled:

> [Naik's] asking me questions. I've got the passenger asking me questions. [Naik's] crying. . . . A lot of things are going on

at the moment. . . . I had paperwork. I had to fill out the impound. I had to situate the belongings. I had to constantly talk to the passenger and the driver. I didn't have any time . . . to . . . read Implied Consent until everything was situated and I felt it was quiet enough to talk to [Naik] so she could understand. . . . She was very emotional. I was going to wait until a time when she was calm and relaxed so she could understand the Implied Consent. I read it to her when the time was right, so she could understand it; when she stopped crying.

The officer read Naik the implied consent rights 18 minutes later, as soon as he felt that the scene was secured and Naik was calm enough to listen to her rights and to make a reasonable decision. After she consented, the State's breath test was given on site.

Given the concerns of the arresting officer for the safety of himself and the passenger, the security of the roadway, the protection of Naik's purse and other valuables, and Naik's fragile emotional state, his 18-minute delay in reading Naik her implied consent rights was timely under the circumstances. See *State v. Marks*, 239 Ga. App. 448, 453-454 (2) (521 SE2d 257) (1999) (holding that the 16-minute delay between the defendant's arrest and the reading of the implied consent notice did not require suppression of the chemical test results when the arresting officer was dealing with a second intoxicated driver and investigating the accident scene); *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985) (holding that a 20 to 30 minute delay was warranted when the arresting officer was investigating the accident scene and dealing with the hazard created by the wrecked vehicle).

The cases relied upon by appellant are inapposite. In three of those cases, the accused were not informed of their implied consent rights until after they were transported to the police station or the jail, for no other apparent reason than the officer's preference or the practice of the department. See *State v. Lamb*, 217 Ga. App. 290, 291-292 (456 SE2d 769) (1995) (the officer "preferred" to read the implied consent warning in the presence of a witness, resulting in the defendant's transport to the police station and an unlawful 30-minute delay); *Vandiver v. State*, 207 Ga. App. 836, 837-838 (1) (429 SE2d 318) (1993) (the department's "standard practice" was to wait until the defendant was transported to the jail before delivering the notification, resulting in an inexcusable delay and the reversal of the conviction); *Clapsaddle v. State*, 208 Ga. App. 840, 841-842 (1) (432 SE2d 262) (1993) (the accused was not given his implied consent rights until after he was transported to the jail, for no apparent reason). Likewise, the arresting officer in *Carthon v. State* did not

deliver the notification until after he transported Carthon to the hospital for testing, forty-five minutes to one hour after her arrest, without even notifying her about the reason for the hospital trip. *Carthon v. State*, 248 Ga. App. 738, 740-741 (548 SE2d 649) (2001), disapproved on other grounds, *Handschuh v. State*, 270 Ga. App. 676, 681 (607 SE2d 899) (2004). This Court held that, in that situation, Carthon's rights under OCGA § 40-6-392 (a) (4) were violated. Id.

Because we find that the officer's delay in delivering Naik's implied consent rights was timely given the circumstances of this case, we affirm the trial court's refusal to suppress the results of her State-administered breath test and accordingly affirm her convictions.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JANUARY 27, 2006.

*Jeremy E. Citron, George A. Stein*, for appellant.
*Joseph J. Drolet, Solicitor-General, Barbara M. Collins, Assistant Solicitor-General*, for appellee.