A06A2171. THE STATE v. AUSTELL.
(645 SE2d 550)

Barnes, Chief Judge.

The State appeals (see OCGA § 5-7-1 (4); *State v. Mack,* 207 Ga. App. 287 (1) (427 SE2d 615) (1993)) the trial court's grant of Vinson Larry Austell's motion in limine to suppress the results of a chemical test of Austell's blood because of the undue delay between Austell's arrest, after a traffic stop, and the reading of his implied consent warnings. Finding no error, we affirm the trial court.

1. When this court

reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. *Morgan v. State,* 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). We are guided by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. *Tate v. State,* 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, "the trial court's application of the law to undisputed facts is subject to de

novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

*Hobbs v. State*, 272 Ga. App. 148 (1) (611 SE2d 775) (2005).

2. In *Hough v. State*, 279 Ga. 711, 715 (2) (a) (620 SE2d 380) (2005), our Supreme Court held that when no traffic accident resulting in serious injuries or fatalities has occurred, but an investigating officer has probable cause to believe that the suspect was driving under the influence of alcohol, OCGA § 40-5-55 requires an arrest before the reading of the implied consent rights. The court reiterated what it held in *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983), that the arresting officer must read the implied consent rights "at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." In *Perano*, the time was reasonable because of the need to stop an altercation between Perano and his wife and to allow Perano to calm down so reading of his rights would be meaningful to him. Id. Further, in *Naik v. State*, 277 Ga. App. 418, 420 (626 SE2d 608) (2006) ("safety of himself and the passenger, the security of the roadway, the protection of Naik's purse and other valuables, and Naik's fragile emotional state"); *State v. Marks*, 239 Ga. App. 448, 453-454 (2) (521 SE2d 257) (1999) (arresting officer was dealing with a second intoxicated driver and investigating the accident scene); *Hollis v. State*, 234 Ga. App. 269, 271 (2) (505 SE2d 837) (1998) (deputy and suspect had been sprayed with pepper spray); *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985) ("investigat[ing] the accident scene and dealing with the hazard created by the wrecked vehicle"), and other similar cases this court recognized that particular circumstances of the event may authorize a reasonable delay between the arrest and the reading of the implied consent warnings. Thus, the question becomes whether the delay in this case was unreasonable or undue, as the trial court found.

In this appeal, the arresting Georgia State Trooper testified that after receiving a radio call and observing Austell's car "straddling the center dash line," he pulled him over. As the trial court found probable cause for the initial stop, and Austell has not appealed that ruling, we will not discuss the evidence concerning the basis for the stop.

According to the State Trooper, after Austell was pulled over, the Trooper detected the smell of alcohol coming from Austell's vehicle, Austell was unsteady on his feet, and he stumbled "a little bit." Although Austell denied that he had been drinking, the Trooper asked him to take an alco-sensor test. Austell, however, did not blow into the alco-sensor, but instead exhaled through his nose. The Trooper then decided to arrest Austell and reached for his handcuffs. At this point, even though Austell had his cell phone with him, he

started to go back to his car to get another cell phone and when the Trooper attempted to put the handcuffs on him, Austell pulled away from him and "snatched" his hand back. When the Trooper tried again to put the handcuffs on Austell, he continued to pull away and put his hands behind his back. Ultimately, the Trooper wrestled Austell to the ground, struck him on the side of the head with his forearm, and finally put the handcuffs on him.

The Trooper then put Austell in his patrol car, called the State Police Post to get a wrecker to remove Austell's car, secured Austell's car, started an inventory of Austell's car, tried to get his composure back, saw that Austell had vomited in the back seat of the patrol car, waited for a deputy to arrive, and finally took Austell to the jail where he read Austell his implied consent rights. The Trooper testified that he delayed reading Austell his rights because, with everything that had taken place, he felt that it would be safer for him to get Austell to the jail where it would be lighted, where others would be, rather than just reading Austell his rights on the interstate with only the two of them present. According to the Trooper, Austell was in custody for ten or fifteen minutes before the deputy arrived, it was approximately another ten or fifteen minutes before he left the scene, it took about five minutes to get from the scene to the jail, and it took approximately another ten minutes after he arrived at the jail before he read Austell his implied consent rights.

At the conclusion of the hearing, the trial court stated that it would grant the motion to suppress because the implied consent warnings were not timely read. The trial court found there was no sufficient justification not to read the warnings at the time of the arrest. We must agree.

Although we are mindful of the difficulties the Trooper had with Austell, various opportunities existed for him to read Austell his rights before he did, and our law demands that the rights be read "at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." (Citation and punctuation omitted.) *Hough v. State*, supra, 279 Ga. at 716 (2) (a). That was not done in this case.

Although the various reasons for the Trooper delaying the reading of the implied consent warnings suggested in the dissent might be reasonable, they were not the reason offered by the Trooper. The one and only reason the Trooper gave for delaying reading Austell his rights was with everything that had taken place, he felt that it would be safer for him to get Austell to the jail where it would be lighted and where others would be, rather than just reading Austell his rights on the interstate with only the two of them present. The trial court rejected this reasoning, implicitly determining that the Trooper's testimony was not credible. As we cannot say that this decision is

clearly erroneous, given the various times in which the warnings could have been given and were not, we are bound to accept it. *Tate v. State*, supra, 264 Ga. at 54. Moreover, we are also bound to construe the evidence most favorably toward upholding the trial court's findings and judgment. Id.

Accordingly, the trial court did not err by granting Austell's motion.

*Judgment affirmed. Blackburn, P. J., Miller, Ellington and Bernes, JJ., concur. Andrews, P. J., and Johnson, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

After a struggle in the dark, the officer in this case subdued, handcuffed, and arrested Austell, a 240-pound male, on suspicion of DUI. As the officer secured Austell's car and began an inventory of its contents, Austell lay down and vomited in the back of the patrol car. Yet the trial court held without explanation that a reading of the implied consent notice at the jail approximately 45 minutes after Austell's arrest amounted to an "undue delay." I believe that this conclusion was erroneous as a matter of law.

The arresting officer was the sole witness at the hearing on Austell's motion to suppress, and nothing in the trial court's comments at the conclusion of the hearing or in its final order suggests that she disbelieved any portion of the officer's testimony. We therefore review the trial court's application of the law to that evidence de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Under this standard of review, the issue is whether the arresting officer read Austell his rights "at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983).

When he pulled Austell over in the early morning darkness, the arresting state trooper, who was working alone, faced a 240-pound 22-year-old who was both drunk and obstreperous. Austell blew air out of his nose rather than through the alco-sensor, pulled away when the officer attempted to put handcuffs on him, and continued to fight back after the officer pushed him onto the guardrail. In the ten minutes or so after handcuffing Austell and placing him in the rear seat of the patrol car, the officer regained some portion of his composure — an effort which apparently included a period "out on the ground" — and then began his inventory of Austell's car. The officer was surely justified in delaying the reading of the implied consent notice until this point, when backup arrived. See *Perano*, supra at 707-708 (delay in reading notice until the defendant was at hospital was justified by altercation at the scene of arrest involving both the defendant and his wife).

By this time, however, Austell had vomited and was lying down in the patrol car's rear seat. In my judgment, this proof of Austell's continued incapacity gave the officer sufficient reason to delay the reading of the notice until soon after arriving at the jail. See *Naik v. State*, 277 Ga. App. 418, 420 (626 SE2d 608) (2006) (officer's and passenger's safety and suspect's "fragile emotional state" justified 18-minute delay). Finally, "there is no evidence that [Austell] would have benefited by being informed of his rights any earlier than he was." *Edge v. State*, 226 Ga. App. 559, 561 (1) (a) (487 SE2d 117) (1997) (two-hour delay justified where newly hired DOT officer waited for backup to insure that defendant was actually intoxicated). Austell thus cannot show that he was prejudiced by the delay.

Based on the uncontroverted evidence, the arresting officer in this case made a reasonable decision to delay the reading of the notice until just after Austell's arrival at the jail, and Austell did not suffer harm as a result. I therefore dissent.

I am authorized to state that Presiding Judge Johnson joins in this dissent.

DECIDED MARCH 23, 2007 —
RECONSIDERATION DENIED APRIL 12, 2007.

*Nina M. Baker, Solicitor-General, Julian A. Mack, Assistant Solicitor-General*, for appellant.
*Julie A. Kert*, for appellee.